[No. H021818. Sixth Dist. Nov. 7, 2000.]

SHEILA S., Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND
CHILDREN'S SERVICES, Real Party in Interest.

**COUNSEL**

Dependency Legal Services and Tamara M. Wayne for Petitioner.

No appearance for Respondent.

Ann Miller Ravel, County Counsel, and Charles Nickell, Deputy County Counsel, for Real Party in Interest.

**OPINION**

**COTTLE, P. J.**—This is a petition for extraordinary writ challenging the findings and orders of the juvenile court in setting a hearing pursuant to Welfare and Institutions Code section 366.26.[1] (§ 366.26, subd. (*l*); Cal. Rules of Court, rule 39.1B.) Sheila S., mother of the children at issue here (mother), argues that the juvenile court erred in granting a section 388 petition and ordering a bypass of mother's existing reunification services. We conclude that a section 388 petition is an appropriate vehicle for modifying a dispositional order and for ordering a bypass of reunification services. We also conclude that substantial evidence supports the juvenile court's findings and orders. Hence, we will deny the petition.

### FACTS AND PROCEDURAL HISTORY

On August 13, 1999, the Santa Clara County Department of Family and Children's Services (the Department) filed separate petitions as to the children Maria J. (born in 1989), Juan J. (born in 1988), and Matthew J. (born in 1992), pursuant to section 300.[2] The Department filed first amended petitions on August 19, 1999, and the children were ordered detained on August

---

[1]Further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2]Matthew is the subject of juvenile dependency proceedings in Santa Clara County Superior Court case No. JD11140. Although the juvenile court granted the subject section 388 petition as to all three children at the same hearing, the juvenile court did not set a section 366.26 hearing as to Matthew because his father was still receiving reunification services. Hence, Matthew is not the subject of the instant petition for extraordinary writ.

20, 1999. The Department filed second amended petitions on September 1, 1999, pursuant to section 300, subdivisions (b) (failure to protect), (d) (sexual abuse), and (j) (abuse of sibling). Maria also allegedly came within section 300, subdivision (c) (serious emotional damage).

The petitions alleged that the children were placed into protective custody on August 17, 1999, on the basis of a warrant petition that alleged that mother repeatedly placed the children at risk of sexual abuse by allowing unsupervised contact with the maternal grandfather, Glen J., who was a registered sex offender. Mother was unable to set appropriate boundaries with the maternal grandparents and allowed contact that she knew was inappropriate.

Mother reported that she was severely sexually abused by Glen J. from the time she could walk until she was eight years old and removed from his care. Mother also reported that Glen J. molested her brother and forced mother and her brother to have sex together. After being removed from her parents' care at the age of eight, mother was raised in foster care until the age of 18. Mother actively sought out the maternal grandparents after having lost contact with them on two different occasions. The maternal grandfather was convicted of incest in 1994, and upon his release from prison, mother actively sought him out because she believed in forgiveness and the power to change. The grandfather was also an active alcoholic, drove while under the influence of alcohol, had been physically and verbally abusive to the children and mother, and had threatened to kill the maternal grandmother in the past.

Mother also encouraged Maria to have unsupervised contact with her biological father, Juan R., who had an extensive criminal history, including indecent exposure and voyeurism. Maria also suffered from severe emotional and behavior problems, including a suicide attempt and assaulting behaviors. Mother also reported that she sent Matthew to live with his "alcoholic" father, Chris S., because Chris S. would not leave mother unless she gave him his son. There had been 19 previous referrals to the Department, with mother receiving intensive intervention services, informal supervision services, and voluntary family maintenance services.

The social worker's jurisdictional/dispositional report confirmed the allegations of the petitions and recommended that the children be made dependents of the court. The social worker noted that mother had been exploited, victimized, and abused throughout much of her life and was unable to see the possibility of harm to her children. She had been unable to establish parent/child or sexual boundaries and was unable to set limits or genuinely

trust in people or relationships because of her family history. The social worker recommended that mother be provided psychological evaluations to assess her capacity to parent and utilize reunification services.

On January 3, 2000, the juvenile court found the allegations of the petitions true, ordered mother to undergo two psychological evaluations and continued the matter for disposition.

The juvenile court conducted the dispositional hearing on February 23, 2000. At the time of the dispositional hearing, the psychological evaluations of mother had not been completed. The juvenile court ordered out-of-home placement of the children and reunification services for mother. The court also set a 45-day review hearing for receipt of the previously ordered psychological evaluations and a 6-month review hearing.

The juvenile court conducted the 45-day review hearing on April 10, 2000. The social worker's report for the interim review included the two psychological evaluations of mother and recommended a bypass of reunification services. In a psychological evaluation dated February 29, 2000, Peter J. Berman, Ph.D., diagnosed mother as suffering from posttraumatic stress disorder, alcohol abuse, and a personality disorder not otherwise specified with borderline, antisocial, and dependent features. According to Dr. Berman, mother's psychiatric problems rendered her incapable of adequately parenting her children and incapable of utilizing reunification services.

The second psychological evaluation was conducted by Bernard M. Sjoberg, Ph.D., and dated March 17, 2000. Dr. Sjoberg diagnosed mother as suffering from a bipolar affective disorder (mixed episode) of moderate severity and a dependent personality disorder with borderline features. Dr. Sjoberg also concluded that mother's disability rendered her unable to adequately care for and control her children, that it was unlikely mother could benefit from the provision of reunification services in the foreseeable future, and that it was highly unlikely that reunification services would substantially improve her parenting skills within the next 12 months.

On April 26, 2000, the Department filed a section 388 petition seeking to modify the dispositional order by terminating the provision of reunification services pursuant to section 361.5, subdivision (b)(2), in light of the two psychological evaluations.

The juvenile court conducted a contested hearing on the section 388 petition on June 23 and July 27, 2000. The Department submitted the social worker's April 10, 2000, interim report that recommended a bypass of

reunification services and included the two psychological evaluations. Mother was the only person to testify at the hearing. Mother testified as to the progress she was making through reunification services and that she believed she should receive services.

At the conclusion of the hearing, the juvenile court found that the Department had proven by clear and convincing evidence that it was in the best interests of the children to not provide reunification services to mother. The juvenile court granted the section 388 petition as to all three children and set a section 366.26 hearing as to Maria and Juan for November 15, 2000.

## DISCUSSION

### A. *Use of Section 388 Petition to Terminate Reunification Services.*

■ Mother makes a number of arguments in support of her assertion that a section 388 petition should not be allowed to terminate the provision of reunification services after disposition. Mother maintains that it would circumvent the provisions of section 352, which governs continuances in dependency cases, that more specific statutes govern the termination of services, and that the granting of the section 388 petition violates principles of res judicata, collateral estoppel, and equitable estoppel.

Section 388 provides in relevant part: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court."

"The petition pursuant to section 388 lies to change or set aside any order of the juvenile court in the action from the time the child is made a dependent child of the juvenile court . . . ." (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415 [33 Cal.Rptr.2d 85, 878 P.2d 1297].)

"At the hearing on the petition pursuant to section 388, the juvenile court's task was to determine whether the Department had demonstrated by a preponderance of the evidence that there was new evidence or a change of circumstances demonstrating that it was in [the children's] best interests that the previous . . . order, [which provided for reunification services for mother], be changed, modified or set aside. [Citations.] In an abundance of caution, the [juvenile court] stated that the court was applying a clear and convincing evidence standard. The petition is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in

the absence of a clear abuse of discretion. [Citations.]" (*In re Jasmon O., supra,* 8 Cal.4th at pp. 415-416.)

Initially, mother points to the provisions of section 352, which set forth general rules for continuances in juvenile dependency cases and provide that "[i]n no event shall the court grant continuances that would cause the hearing pursuant to Section 361 [disposition] to be completed more than six months after the hearing pursuant to Section 319 [detention]." Mother maintains that the Department is attempting to extend the six-month time limit for completing the disposition by use of a section 388 petition and that a section 388 petition should not be allowed to circumvent the time requirements of section 352. However, section 352 is designed to help ensure prompt resolution of the dependency proceeding. This goal is furthered by permitting a section 388 petition to modify an existing dispositional order if the appropriate showing can be made.

Mother also points to the rule of statutory construction that a more specific statute controls over a general statute and argues that other statutes that specify when reunification services may be terminated should control. (See Code Civ. Proc., § 1859.) Mother's argument is unavailing. Although there are specific statutes governing the juvenile court's dispositional determination whether to order reunification services and whether to terminate reunification services at certain stages of the dependency (e.g., 6-, 12-, and 18-month review hearings),[3] section 388 is the specific statute governing modification of an existing juvenile court order. When it comes to modifying an existing order, the provisions of section 388 prevail. Furthermore, section 388 refers to "any order." Petitioner would have us read "any order" to exclude dispositional orders or orders providing reunification services. This we cannot do. The language of section 388 is clear. "Any order" means exactly that.

In addition, our interpretation is in harmony with the overall dependency scheme. "The objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307 [19 Cal.Rptr.2d 544, 851 P.2d 826].) "Dependency proceedings are proceedings of an ongoing nature. While different hearings within the dependency process have different standards and purposes, they are part of an overall process and ongoing case. One section of the dependency law may not be considered in a vacuum. It must be construed with reference to the whole

---

[3]These statutes include sections 361.5 (disposition), 366.21, subdivisions (e) (6-month review) and (f) (12-month review), and 366.22, subdivision (a) (18-month review).

system of law of which it is a part so that all may be harmonized and have effect." (*Ibid.*) Section 388 plays a vital role in the statutory scheme by allowing the juvenile court to modify existing orders in response to new evidence and changed circumstances. Mother's proposed interpretation would severely limit the juvenile court's ability to respond to new information. If circumstances warrant modifying an existing order, it is in the best interest of all involved that the change take place sooner rather than later.

Mother also contends that the juvenile court's granting of the section 388 petition violated principles of res judicata, collateral estoppel, and equitable estoppel. However, mother's argument ignores the fact that juvenile dependency proceedings are proceedings of an ongoing nature and often result in multiple appealable orders. (See § 395; *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150 [65 Cal.Rptr.2d 913].) We recognize that the dispositional order was final and not subject to direct attack by appeal at the time the Department filed the instant section 388 petition. However, section 388 provides express statutory authority permitting the juvenile court to modify its orders based on new evidence or changed circumstances. In light of the ongoing nature of the proceedings and the express statutory authority permitting modification, principles of res judicata and collateral estoppel do not bar a modification of a dispositional order by way of a section 388 petition.

With regard to equitable estoppel, mother maintains that, since she has continued to participate in reunification services in good faith, the Department should not be able to unfairly terminate services before she has had an opportunity to reunite with her children. However, the Department was required to commence providing services following detention of the children. (§ 319.) The fact that the juvenile court initially ordered services at the dispositional hearing and subsequently terminated services as being in the best interest of the children forms no basis for invoking equitable estoppel on mother's behalf.

In light of the foregoing, we conclude that a section 388 petition is an appropriate vehicle for modifying a dispositional order and ordering a bypass of reunification services.

B. *Sufficiency of the Evidence Supporting the Juvenile Court's Determination.*

Mother also argues that the juvenile court erred when it determined that granting the section 388 petition was in the children's best interest and that she should receive family reunification services for her children. Although mother made these arguments separately, we treat them together as an attack

on the sufficiency of the evidence supporting the juvenile court's determination.

As noted above, a section 388 petition is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion.

In ordering the termination and bypass of reunification services, the juvenile court relied on the provisions of section 361.5, subdivision (b)(2). Section 361.5, subdivision (b)(2), states: "Reunification services need not be provided to a parent or guardian . . . when the court finds, by clear and convincing evidence, . . . [¶] . . . [¶] [t]hat the parent or guardian is suffering from a mental disability . . . that renders him or her incapable of utilizing those services." "Mental disability" in this context means "that a parent or parents suffer a mental incapacity or disorder that renders the parent or parents unable to care for and control the child adequately." (Fam. Code, § 7827, subd. (a).) "When it is alleged, pursuant to paragraph (2) of subdivision (b), that the parent is incapable of utilizing services due to mental disability, the court shall order reunification services unless competent evidence from mental health professionals establishes that, even with the provision of services, the parent is unlikely to be capable of adequately caring for the child within the time limits specified in subdivision (a)." (§ 361.5, subd. (c).)

Initially, we note that, although section 361.5, subdivision (b)(2), requires proof by clear and convincing evidence, a section 388 petition, as pointed out by mother, only requires proof by a preponderance of the evidence. Nevertheless, since the juvenile court made its findings by clear and convincing evidence, the potential significance of these differing standards does not come into play in this case.

■ "On review of the sufficiency of the evidence, we presume in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576 [32 Cal.Rptr.2d 535].)

The "clear and convincing" standard specified in section 361.5, subdivision (b), is for the edification and guidance of the trial court and not a standard for appellate review. (*Crail v. Blakely* (1973) 8 Cal.3d 744, 750 [106 Cal.Rptr. 187, 505 P.2d 1027]; *In re Heidi T.* (1978) 87 Cal.App.3d 864, 871 [151 Cal.Rptr. 263].) " 'The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is

substantial evidence to support its conclusion, the determination is not open to review on appeal.' [Citations.]" (*Crail v. Blakely, supra,* 8 Cal.3d at p. 750.) Thus, on appeal from a judgment required to be based upon clear and convincing evidence, "the clear and convincing test disappears . . . [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 365, p. 415.)

In the present case, the Department supported its section 388 petition with two psychological evaluations of mother that demonstrated she was incapable of benefiting from reunification services within the time period prescribed by law. These psychological evaluations were essentially unrebutted. As a result, we conclude that there was substantial new evidence supporting the juvenile court's determination that it was in the children's best interests to not provide reunification services to mother. Hence, the juvenile court did not abuse its discretion in setting aside the order granting reunification services, in terminating reunification services, and in setting a hearing pursuant to section 366.26.

### DISPOSITION

The petition for extraordinary writ is denied.

Elia, J., and Mihara, J., concurred.

Petitioner's petition for review by the Supreme Court was denied January 17, 2001.