Filed 2/26/13  In re Jillian C. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re In re the Matter of JILLIAN C., | 2d Juv. No. B244968 <br> (Super. Ct. No. J1395831`) <br> (Santa Barbara County) |
| JULIE G., <br><br> Petitioner, <br><br> v. <br><br> SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA, <br><br> Respondent. <br><br> SANTA BARBARA CHILD PROTECTIVE, <br><br> Real Party in Interest. | |

Julie G. (mother) seeks extraordinary writ review of a juvenile court order terminating reunification services and setting a permanency planning hearing for her daughter, Jillian C.  (Welf. & Inst.Code, § 366.26.)[1]  Mother contends that the court

---

[1] All statutory references are to the Welfare and Institutions Code.

erroneously found that she had failed to participate regularly and make substantive progress in her case plan. We deny the petition.

*Factual and Procedural Background*

Daughter was born in September 2009. In February 2012 Child Welfare Services (CWS) filed a section 300 dependency petition on her behalf. The petition alleged that, because of substance abuse, the parents were unable to care for daughter. In the Jurisdiction/Disposition Report, CWS stated: "[M]other has used marijuana on a near daily basis since she was a young teenager and she has used methamphetamine, cocaine, and various other drugs on and off. . . . [M]other reported that she uses drugs as a coping skill to deal with stress."

On March 29, 2012, the juvenile court sustained the petition and declared daughter a dependent child. The court ordered that daughter be removed from the parents' physical custody and that CWS provide reunification services. Mother's case plan required, inter alia, that she (1) "demonstrate her ability to live free from drug dependency by consistently testing negative for all substances, regularly engaging in substance abuse treatment, and obtaining a sponsor"; and (2) "demonstrate her ability and willingness to have custody of her child by obtaining and maintaining a legal, verifiable source of income and appropriate housing."

Prior to the six-month review hearing, CWS recommended that reunification services be terminated and that the matter be set for a permanency planning hearing pursuant to section 366.26. The matter was continued to November 1, 2012, for a contested review hearing.

At the hearing, the court received CWS's Status Review Report filed on September 27, 2012. In the report CWS concluded that mother had not complied with the case plan's requirement that she avoid illegal drugs and engage in substance abuse treatment. CWS noted: On March 13, 2012, mother enrolled in an inpatient treatment program at Recovery Way. She was placed on probation for using spice (synthetic marijuana). On May 10, 2012, mother was discharged from the inpatient program for violating rules while she was on probation. Mother enrolled in a Recovery Way outpatient program. On

2

June 13, 2012, mother admitted using spice and alcohol. Mother was discharged from the outpatient program and referred to a "detox" program. She was discharged from the detox program for rule violations. Mother entered another detox program. Upon release from that program on June 30, 2012, she enrolled in an outpatient treatment program at Recovery Way. She made progress in the outpatient program, and in July 2012 she reentered the inpatient program. But on September 6, 2012, she was discharged from the inpatient program.

A report from the provider of the inpatient program explained why she had been discharged: "With repeated support and direction from staff, [mother's] progress in treatment continues to be stunted by her chronic attempts to staff split, blame others and not take responsibility for her past and current negative attitudes and behavior." After her discharge, mother entered an outpatient program at Coast Valley.

In the Status Review Report, CWS also concluded that mother had failed to comply with the case plan's requirement that she maintain a legal, verifiable source of income and appropriate housing. CWS noted that mother was unemployed, that her unemployment benefits had "ended sometime in September [2012] leaving [her] without an income," and that she was living in a homeless shelter.

At the hearing, the social worker testified as follows: Mother's drug tests have all been negative. She missed one test on May 26, 2012. After her September 6, 2012 discharge from the Recovery Way inpatient program, mother enrolled in other programs and has complied with these programs. Mother applied for low-income housing and said that "she might have a job with a pizza place."

Mother testified that she had applied for a two-bedroom apartment. Her application had been conditionally approved. The condition was that she provide proof of employment. According to mother, she had the requisite proof: "I package samples for a health company up at the bridge house and I get paid cash."

After considering the evidence, the juvenile court declared: "I can't find that [the parents have] participated regularly and made substantive progress." "I find that both the mother's and father's progress has been minimal in this instance."

3

*Applicable Law and Standard of Review*

If a child is under the age of three at the time of initial removal from a parent and the juvenile court finds by clear and convincing evidence at the six-month review hearing "that the parent failed to participate regularly and make substantive progress in a court ordered treatment plan, the court may schedule a hearing pursuant to Section 366.26 within 120 days." (§ 366.21, sub. (e).) We review for substantial evidence the juvenile court's finding that mother failed to participate regularly and make substantive progress in the case plan. (*Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, 1341; *Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880-881.) "We must view the evidence in the light most favorable to [CWS] and indulge all legitimate and reasonable inferences to uphold the [finding]. [Citation.]" (*Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1010.)

*Substantial Evidence Supports the Juvenile Court's Finding*

Substantial evidence supports the juvenile court's finding that mother failed to participate regularly and make substantive progress in the treatment of her drug dependency. While in the inpatient treatment program at Recovery Way, she was placed on probation for using spice. She was subsequently discharged for rule violations. Mother then entered a Recovery Way outpatient program, but was discharged for using spice and alcohol. Mother entered a detox program, but was discharged for rule violations. Upon release from another detox program, she reentered Recovery Way's inpatient program but was discharged because her progress was "stunted by her chronic attempts to staff split, blame others and not take responsibility for her past and current negative attitudes and behavior."[2] The social worker testified: "The recommendation from the drug and alcohol counselor and from the doctor that did the psych[ological] eval[uation] is that [mother] needed inpatient treatment and she's been unable to

_____

[2] Mother's compliance with other drug programs after September 6, 2012 (*ante* p. 3), is irrelevant to the trial court's decision to terminate reunification. She failed at all programs prior thereto.

successfully complete that." Mother testified that her case plan required six months of inpatient treatment, but she had completed only four months.

Substantial evidence also supports the juvenile court's finding that mother failed to participate regularly and make substantive progress toward the case plan objective of "obtaining and maintaining a legal, verifiable source of income and appropriate housing." Mother was living in a homeless shelter. Although mother testified that she was employed by "a health company up at the bridge house," she provided no proof of employment and did not identify her employer by name. The social worker contradicted mother's testimony. The social worker testified: "I recently spoke with [mother] and she said she might have a job with a pizza place."

*Disposition*

The petition is denied.

NOT TO BE PUBLISHED.


YEGAN, J.


We concur:


GILBERT, P.J.


PERREN, J.

5

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____

Richard R. Martinez, for Petitioner.

No appearance for Respondent.

Dennis A. Marshall, County Counsel, County of Santa Barbara, Sarah A. McElhinney, Deputy, for Real Party I Interest.