Filed 11/12/13  In re C.C. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re C.C., A Person Coming Under the Juvenile Court Law. | B247060 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County  Super. Ct. No. CK60431) |
| Plaintiff and Respondent, | |
| v. | |
| SHERRY E., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County. D. Zeke Zeidler, Judge.  Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Appellant.

John F. Krattli, County Counsel, James M. Owen, Assistant County Counsel, William D. Thetford, Deputy County Counsel, for Respondent.

_____

Appellant Sherry E. (mother) appeals from juvenile court orders removing her four-month-old daughter, C.C., from her custody and denying mother reunification services. We conclude substantial evidence supports the removal order, and under both the substantial evidence and abuse of discretion standards, the trial court did not err in denying reunification services. Accordingly, we affirm.

## FACTS AND PROCEEDINGS

### A. *Referral and Preliminary Matters*

Mother has had a lengthy history of DCFS referrals for her two older daughters. Her parenting of C.C. came to the department's attention on September 24, 2012, when a referral was made to the DCFS that C.C. was exposed to second-hand methamphetamine smoke. The report to DCFS stated that one of mother's roommates had tested positive for amphetamine, other tenants who lived in the residence had been smoking methamphetamine for several months, and C.C. had been exposed to the smoke.

A social worker accompanied by police officers went to the location. The manager of the complex said too many people were living in the apartment and there were lots of comings-and-goings. Tenant Ray said that he did not use illegal drugs and there was no reason for DCFS's concern for the baby. But police officers watching the unit saw a man on a balcony who appeared to be under the influence. Tenant Robert told police he stayed at the location several nights during the week. Robert was on parole for weapons charges.

The social worker described the residence as disorganized and smelling of smoke. Various computers and peripherals were found in the unit and the place appeared cluttered. A pitbull lay asleep on the floor. C.C., however, appeared healthy. Mother denied methamphetamine use but she had heard that someone had smoked the drug in the bathroom. Mother said she would drug test but wanted to wait for three days because she did not want to take C.C. out in the heat.

2

The police officers then entered the home, found two baggies of methamphetamine, two marijuana pipes and a scale. Officers reported that the residence was known to the department as a drug house, and arrests had been made there in the past. Both male tenants were arrested, one for being a felon in possession of ammunition, apparently based on a shotgun shell or bullet found in the home.

On September 24, 2012, the court detained C.C., finding sufficient cause to remove her from parents' custody. Monitored visits were ordered. Prior to the adjudication hearing on November 9, 2012, DCFS interviewed both father and mother and filed its report with the court. DCFS advised that mother and father had agreed to drug test in the interim. Mother had two negative tests and four missed tests. Father had two positives, one negative and four missed tests. DCFS recommended that reunification be denied for mother because mother had failed to reunify with two other children, one of whom had been adopted. The department recommended reunification services for father with participation in drug and other programs.

## B. *Adjudication and Disposition Hearing*

Mother testified at the November 9, 2012 adjudication hearing. The methamphetamine, drug pipes and scale were found in the living room but mother said she did not usually go into that room. She testified that, in conjunction with 2006 dependency proceedings for her eldest daughter, mother had begun an out-patient drug program and completed four and one-half months before the court terminated reunification services. She started another program and then quit after her parental rights were terminated. She explained the cluttered state of the residence as a product of remodeling; the several computers were there because her boyfriend repaired computers.

Mother's landlord, who lived in the same residence, also testified. The landlord was a recovering methamphetamine addict and had recently tested positively. Mother told her she had seen methamphetamine crystals in the bathroom, and that mother had experimented with methamphetamine for 3 months some 10 years ago. The landlord also said that mother had told her she last used methamphetamines 8 years ago. Mother

3

testified she saw little granules in the bathroom. "So I swept them up and I put them on the side." Generally, mother denied any drug problem.

The court also reviewed reports that showed that mother had failed to reunify with daughter S.E. and that on June 28, 2007, the court had terminated mother's parental rights to S.E., who had been adopted by her paternal grandmother. Reunification services had also been terminated for mother's middle daughter, K.M. who was under legal guardianship with her paternal grandmother. (S.E. and K.M. have different fathers.)[1]

The court sustained an amended petition that mother had a history of substance abuse, had failed to complete a previously ordered drug program as part of S.E.'s proceedings, allowed methamphetamine and drug paraphernalia to be in plain sight at her residence, and failed to address the problems that brought half-siblings into the dependency system, all such that there was a risk to the physical health and safety of C.C. The petition was sustained on the additional grounds that father was unable to provide ongoing care and supervision. The court set a disposition hearing for January 23, 2013.

Prior to the disposition hearing, DCFS reported that mother had failed to keep an appointment with a substance abuse counselor and refused to respond to follow-up telephone calls. She had missed four drug tests and tested negatively seven times. Mother did attend a parenting class although it was not on the DCFS list. Mother also discussed other programs she had attended. Mother explained that the fathers of her two older children both had drug problems. Dr. Alfred Crespo interviewed mother and concluded that mother's drug problem was likely the result of chronic substance abuse as to which she was in denial. He believed reunification services would not resolve her drug problem. Amy Castro of Social Model Recovery Systems testified at the disposition hearing that, based on several assessment tools applied in her interview with mother, she did not believe that mother had a substance abuse problem at this time. Mother did not tell Ms. Castro that she had two children removed from her custody because of a drug

---

[1]    We upheld termination of parental rights as to S.E. in a 2008 unpublished opinion (B200290). Mother had failed to appear at the dispositive 366.26 hearing in the juvenile court.

4

problem. Although mother mentioned methamphetamines had been found, she did not tell Ms. Castro that two baggies of methamphetamine and drug paraphernalia had been found in plain sight at her residence. Nurse Cheryl Clifford testified that when she observed C.C., the baby looked healthy.

The court expressed serious concern about mother's credibility. Reunification services were provided for father but denied for mother. The court found by clear and convincing evidence that reunification services had been denied and parental rights had been terminated, respectively, for two half siblings and that mother had not made a reasonable effort to treat the problems that led to removal and termination. (Welf. & Inst. Code, § 361.5, subd. (b)(10), (11).)[2] Monitored visits were ordered for mother with DCFS discretion to liberalize if mother were in therapy.

## DISCUSSION

Mother makes two arguments on appeal. She first contends there was insufficient evidence to remove C.C. from mother's custody, and second, the trial court erred in denying mother reunification services. We find no merit in either argument.

1.     *Substantial Evidence Supported the Trial Court's Removal Order*

Before a child may be removed from a parent's custody, section 361, subdivision (c)(1) requires a showing by clear and convincing evidence that there is substantial danger to the child absent removal and there are no alternative methods of protecting the child. A juvenile court's determination of removal is reviewed for substantial evidence. (*In re T.V.* (2013) 217 Cal.App.4th 126, 135-136.) Although the

---

[2]     The record is unclear whether the court was denying reunification services because parental rights were terminated as to S.E. alone, or also based on denial of reunification services as to K.M. as well. DCFS reported both of the prior dispositions. The parties' appellate briefs state the trial court's denial of reunification services was based on both subdivision (10) [denial of reunification services] and subdivision (11) [termination of parental rights] of section 361.5 so we accept that services for mother were denied based on the rulings as to both of mother's other daughters.

All future undesignated code references are to the Welfare & Institutions Code.

standard required for the juvenile court is clear and convincing evidence, on appeal that test disappears and we apply the traditional substantial evidence review. (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 881.) Mother challenges the court's findings based on her evidence that she did not abuse drugs, drugs found at the residence were not mother's, she tested clean on several occasions, mother's visitations were consistent, no apparent physical injury was noted on C.C., and Ms. Castro testified that her assessment was that mother was not a drug user. Any problems could have been addressed by less onerous means than removal; for example, by on-demand drug tests and unannounced visits.

To accept mother's argument would require us to reweigh testimony and ignore respondent's countervailing evidence, something we may not do. (*Sheila S. v. Superior Court, supra,* 84 Cal.App.4th at p. 881.) We start with the trial court's finding that mother was not credible. That finding undermines the major part of mother's case which was through her own testimony. The court was entitled to discredit mother's testimony that methamphetamine had been found on a toothpaste tube based on usage by others, that she was unaware that others were smoking methamphetamine in the house and that she did not observe methamphetamine or drug paraphernalia that were found by police in plain sight. There was evidence that the residence was a known drug location and that an unusual number of people went in and out of the residence. Two children were removed from mother's care due to her substance abuse. By mother's own testimony, both of the girls' fathers were drug users. Although mother tested negatively on several occasions, she also missed a number of tests which the juvenile court was free to consider as positive tests. She refused to test on demand. Given this evidence, the trial court was justified in concluding that C.C. was at risk and that means other than removal would be insufficient to protect C.C.

2. *The Trial Court Reasonably Denied Reunification Services.*

Mother contends the trial court prejudicially erred when it denied mother reunification services.

6

Section 361.5, subdivision (b) (10), (11) provides:

"(b) Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following:

. . . .

"(10) That the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent or guardian pursuant to Section 361 and that parent or guardian is the same parent or guardian described in subdivision (a) and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian.

"(11) That the parental rights of a parent over any sibling or half sibling of the child had been permanently severed, and this parent is the same parent described in subdivision (a), and that, according to the findings of the court, this parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from the parent."

A parent whose child is subject to juvenile court jurisdiction is presumed to be entitled to reunification services. (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 95.) Section 361.5 lists 16 different grounds, however, for the juvenile court to deny reunification. The court must find that at least one of the disqualifying circumstances exists by clear and convincing evidence. (§ 361.5, subd. (b).) Two of those grounds are that reunification services were previously denied or parental rights terminated for reasons that have not been subsequently addressed by the parent.

It is undisputed that mother's parental rights were terminated as to S.E. and reunification services were denied as to K.M. Mother argues that, notwithstanding the dispositions in the cases involving C.C.'s older sisters, it was in C.C.'s best interests to grant mother reunification services under section 361.5, subdivision (c).

Ordinarily an appellate court reviews an order denying reunification services for substantial evidence. (*Cheryl P., supra,* 139 Cal.App.4th at p. 96.) When the point on appeal does not involve the facts underlying the finding of failure to reunify or termination of parental rights, or failure to make reasonable efforts, but instead that it is nonetheless in the child's best interests to offer reunification services, there is authority

7

that review is under the abuse of discretion standard.  (*In re Albert T.* (2006) 144 Cal.App.4th 207, 218, fn. 5.)

Under either standard, we find no error.  Mother lost custody of two children, she exposed C.C. to drugs and drug paraphernalia, she has consistently denied any substance abuse problem notwithstanding strong evidence to the contrary, and at least one expert doubted reunification services would adequately address the problem.  Although mother had visited C.C. as regularly as permitted and appears to have a bond with her daughter, and even though father was given reunification services, the trial court reasonably could have found that reunification would prove unsuccessful and therefore was not in C.C's best interests.

## DISPOSITION

The juvenile court's orders are affirmed.


                                          RUBIN, J.
WE CONCUR:


        BIGELOW, P. J.



        FLIER, J.



8