Filed 6/11/15  In re S.T. CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re S.T., a Person Coming Under the Juvenile Court Law. | |
| MARIN COUNTY HEALTH AND HUMAN SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>J.L.,<br><br>        Defendant and Appellant. | A142767<br><br>(Marin County<br>Super. Ct. No. JV25907a) |

### INTRODUCTION

J.L., the father of S.T., (Father) appeals from a dispositional order denying him reunification services under the bypass provisions of Welfare and Institutions Code section 361.5.[1]  He maintains no substantial evidence supports the court's denial of reunification services.  We disagree, and affirm.

### PROCEDURAL AND FACTUAL BACKGROUND

We set forth only those facts relevant to the issue Father raises on appeal.

The underlying petition was filed in April 2014, alleging S.T.'s mother failed to provide him and his half siblings with adequate food, clothing and medical treatment due

---

[1] All further statutory references are to the Welfare and Institutions Code.

to her mental illness or substance abuse.  At the time, S.T.'s father was incarcerated in the Marin County Jail.[2]

S.T., born in 2007, was first detained when he was one year old after his mother was arrested for child endangerment.  At that time, Marin County Health and Human Services (Department) attempted to "engage [Father] in visiting," but he never "followed through with any visits while [S.T.] was in foster care, or after [his] return to his mother's care.

The Department interviewed Father in regard to the instant petition, and reported Father "provided inconsistent and confusing statements" regarding his contact with S.T. Father claimed to have last seen S.T. in September or October 2013, but also reported he had not seen S.T. since his birth.  Following an interview with Father on March 27, the Department reported he was "vague about how much time he had spent with [S.T.] in his lifetime, or what kind of relationship they had, and refused to answer related questions in detail."  Father was "markedly detached" and had a "flat affect."  About two weeks later, the Department attempted to interview him again in the county jail, but Father stated he did " 'not want to talk at this time.' "  He then walked out of the interview.

The Department interviewed S.T., who could not remember the last time he saw Father or what he looked like.  S.T. told a social worker:  " 'I don't have a dad. . . . He just didn't die. . . .  He lives far away.' "

S.T.'s mother reported Father "kidnapped" S.T. from her home in August 2013. S.T.'s half brother recalled that S.T. spent the night at Father's home once "about one year ago," but said S.T. did not want to go back.

Father was found " 'incompetent' to stand trial . . . and will remain at the Marin County Jail until a bed opens up at Napa State hospital."  The Marin County District Attorney's office reported " 'The length of [Father's] stay in the hospital is dependent on his cooperation with treatment and taking prescribed medication and his stay could be

---

[2] The record does not reflect the charges brought against Father.

2

"days, weeks, or months." ' " Once released from the hospital and tried, Father "could be sentenced to up to '5 years.' "

Father appeared, in custody, at the April 21, 2014, jurisdictional hearing. After Father was escorted into the courtroom, he stated: "Well, thank you, everybody, for coming. I'm going to go back to my room now." His attorney asked him "don't you want to be involved in this case?" to which he responded "That's fine, thank you." His attorney stated "For the record, my client is in custody, he was brought into the room, he stood before us . . . and announced his intention to leave, and he then left the room. So, he's not present."

Father could not attend the next four hearings due to his incarceration. At the July 14, 2014 hearing, Father's attorney reported he was "in custody [in a psychiatric hospital] in Los Angeles, and he really has no idea of how long he's going to be there." She stated she informed Father "what the issues are in court and the fact that no services are being offered to him," and he "didn't really want to oppose." His attorney was "going to take no position on that issue. . . . So all I can do is take no position and submit the issue to the Court on the evidence that it has." County counsel indicated she had learned that morning that Father was back in Marin County Jail, but after checking, the clerk stated he was "still in LA."

At the continued hearing on August 1, Father's attorney represented he had "just returned from the mental health facility in Los Angeles," and sought a continuance. The social worker read an e-mail from the assistant district attorney handling Father's case, which stated Father "has been returned to Marin County Jail, but the Court has not yet technically certified him as returned to competency. I will be speaking with his criminal defense attorney . . . about the cases and whether there will be any resolution, or if they will be tried." Father also had two new assault charges "that he supposedly picked up while he was in custody." The parties stipulated that if Father were present, he would testify "he has been advised by his criminal attorney within the last week, thereby believes, that at a hearing on Tuesday there is a possibility that he may be released based on a time served finding."

The court found "by clear and convincing evidence the services would be detrimental to the child."

## DISCUSSION

Father claims "there is absolutely nothing in this record to demonstrate that [S.T.] would suffer any detriment if [he] were to be given reunification services."

Section 361.5, subdivision (e) provides in part "[i]f the parent or guardian is incarcerated, institutionalized, or detained by the United States Department of Homeland Security, . . . the court shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child. In determining detriment, the court shall consider the age of the child, the degree of parent-child bonding, the length of the sentence, the length and nature of the treatment, the nature of the crime or illness, the degree of detriment to the child if services are not offered, . . . the likelihood of the parent's discharge from incarceration, institutionalization, or detention within the reunification time limitations . . . and any other appropriate factors."

As one court explained, " 'there are many cases in which the provision of . . . services has little or no likelihood of success and thus only serves to delay stability for the child, particularly if the incarcerated parent is the only parent receiving services. This is especially true when the parent will be incarcerated longer than the maximum time periods for reunification efforts. It is also frequently true when the parent is incarcerated in a facility that has no services sufficient to help the parent work toward reunification and there is no reasonable way to provide services to that parent. Indeed, to attempt services in such circumstances may be setting everyone up for failure, including the parent, agency, and child. Thus, in cases such as these, it may be possible to show that providing services to the incarcerated parent would be detrimental to the child since it would delay permanency with no likelihood of success.' " (*Fabian L. v. Superior Court* (2013) 214 Cal.App.4th 1018, 1030–1031, italics omitted, quoting Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2012), § 2.129[2][b], pp. 2–390 to 2–391.)

4

We uphold the court's denial of reunification services if supported by substantial evidence. (*In re Brian M.* (2000) 82 Cal.App.4th 1398, 1401.) "The 'clear and convincing' standard specified in section 361.5 . . . is for the edification and guidance of the trial court and not a standard for appellate review. [Citations.] ' "The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal." [Citations.]' [Citation.]" (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880–881.)

The evidence showed S.T., the subject of a dependency proceeding for the second time in his six years, had no parent-child bond with Father. S.T. stated he had no father, explaining he was not dead, but lived far away. In an interview with Department, Father was "vague" about his relationship with S.T., and gave conflicting versions of the last time he saw him. Indeed, Father now concedes "he has not had an ongoing relationship with [S.T.] and that he and his son do not share a bond."

Father asserts "just because [he] and [S.T.] did not have an ongoing relationship does not necessarily amount to detriment." The evidence showed there was not simply the absence of a relationship—Father actively avoided a relationship with S.T. In the prior dependency proceeding, he failed to "follow through with any visits while [S.T.] was in foster care, or after [his] return to his mother's care." In this proceeding, Father expressed no interest in reunification services with his child, and walked out of both an interview with the Department and the jurisdictional hearing.

Additionally, Father had been incarcerated for about 25 months of S.T.'s life. He had 13 prior convictions, including battery, use of a controlled substance, burglary, and four convictions for driving under the influence. He was the subject of a restraining order. At the time of the hearing, he was in custody, had been determined to be incompetent to stand trial, and it was unclear whether he had been returned to competence. In the meantime, two new assault charges had been filed against him arising from in-custody incidents. Although Father "believe[d]" he might "be released based on

5

a time served finding," no evidence in the record supports that belief.  The evidence amply supports the trial court's finding that ordering reunification services to Father would be detrimental to S.T.

Father also claims reunification services should not be bypassed because S.T. "can only benefit from having a father in his life."   Father, however, points to no evidence in the record supporting this contention.

In sum, the complete absence of any parent-child bond and S.T.'s young age, combined with the evidence of Father's extensive criminal record, current incarceration, mental health issues, and refusal to discuss his child with the Department or participate in these proceedings when he was transported to court, constitutes substantial evidence of detriment to S.T. if reunification services were ordered for Father.

**DISPOSITION**

The order is affirmed.

_____

Banke, J.

We concur:

_____

Margulies, Acting P. J.

_____

Dondero, J.