Filed 9/22/15  In re Joshua H. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JOSHUA H., a Person Coming Under the Juvenile Court Law. | B260190 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>YOLANDA R.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. DK07115) |

        APPEAL from an order of the Superior Court of Los Angeles County, Margaret S. Henry, Judge.  Affirmed.

        Ernesto Paz Rey, under appointment by the Court of Appeal, for Defendant and Appellant.

        Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

————————————

## INTRODUCTION

Appellant Yolanda R. (mother) appeals from the juvenile court's order removing her then 16-year-old son, Joshua H., from mother's physical custody pursuant to Welfare and Institutions Code[1] section 361. Mother challenges the sufficiency of the evidence. We conclude the record supports the court's finding that mother threatened Joshua with a knife while expelling him from the home, and this was sufficient to warrant the removal order in view of the substantial danger such extreme conduct posed to Joshua's physical and mental well-being. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

On August 26, 2014, the Los Angeles Department of Children and Family Services (DCFS) received a referral alleging mother had physically and emotionally abused Joshua two days earlier. The reporting party stated that mother chased Joshua out of the house with a knife after arguing with him over some food. This was allegedly the third or fourth time mother had locked Joshua out of the house after an argument. Joshua reportedly spent the night at his maternal aunt's home.

A Department social worker interviewed Joshua about the incident. Joshua reported that the incident began in the kitchen where mother had some take-out food sitting on the counter. Mother reportedly ordered Joshua not to touch " 'her' food," but Joshua nevertheless inspected the food and asked mother, in a "joking" manner, "what's this?" Mother became angry at that moment and ordered Joshua to give her his cell phone. Joshua "shrugged off" the demand, which reportedly "infuriated" mother. Mother then commanded Joshua to turn over his cell phone and keys and leave the home. Mother grabbed for the keys from Joshua's pocket, but Joshua blocked her with his hand and made his way to the backdoor to exit the house. As he was stepping out the door, mother reportedly grabbed a one-foot long kitchen knife, held it in front of her and yelled at him, " 'don't you even think of bringing your butt back in here!' " Joshua called his maternal aunt to pick him up and stayed at her house that night.

---

[1] All further statutory references are to the Welfare and Institutions Code.

2

Joshua reported this was the fourth time in the last two to three years that mother ordered him to leave the home. This incident was the first time he had spent the entire night away from the home. He reported that when he returned the next day, he and mother had minimal conversation about the incident and never discussed it again. According to the social worker, Joshua seemed "unfazed" by the incident; he said he was " 'used to it' " because mother regularly "grab[s] these objects as scare tactics." Joshua denied that mother had any mental health issues; he reported that she took medication for her high blood pressure and said she consumed marijuana in her room to cope with " 'stress.' " Joshua said he had no current relationship with his father, who had been out of Joshua's life for the past two to three years, and he had no interest in living with his father.

The social worker interviewed mother. Mother acknowledged that she had a verbal altercation with Joshua, but denied threatening him with a knife. She admitted commanding Joshua to relinquish his cell phone and keys and leave the house, but said this was intended to allow him to "cool off," as he had been acting disrespectfully. With respect to the knife, mother claimed that Joshua knocked over some kitchen utensils when he stormed out the backdoor, and she had picked up a " 'spoon or spatula' " as he left the house. Mother acknowledged she had difficulty as a single parent managing Joshua's behavior, and Joshua's disobedience was especially challenging because he is "so 'big and strong.' " Mother said she took Prozac to manage a hormone imbalance associated with premenstrual dysphoric disorder, and she used medical marijuana, pursuant to a license, to cope with sciatic nerve pain.

On August 29, 2014, the juvenile court held the initial detention hearing. The court found the Department presented a prima facie case for detaining Joshua and ordered Joshua detained in the maternal aunt's custody pending further disposition.

On October 3, 2014, the Department filed a supplemental report concerning its efforts to formulate a voluntary reunification plan with mother. The report indicated that Joshua was apprehensive about returning to mother's custody. Joshua reported that mother had not attended counseling during the term of his detention. According to

3

Joshua, mother continued to maintain that the incident was his fault, she refused to admit that she had a knife and disavowed any willingness to change. Mother admitted she was not enrolled in counseling, but she was taking parenting classes. The Department confirmed mother was enrolled in the reported parenting program.

The Department concluded that a voluntary family reunification plan would not be appropriate due to the continued acrimony between mother and Joshua over who was to blame for the incident. The Department maintained that regardless of whether mother threatened Joshua with a knife or a "handful of utensils" as she claimed, her conduct reflected deep anger management issues that would pose a significant danger to Joshua were he returned to mother's physical custody. The Department asserted this danger could not be ameliorated without mother undergoing individual counseling. Accordingly, the Department reaffirmed its recommendation to remove Joshua from mother's custody, with ordered anger management classes and individual counseling for mother.

On October 3, 2014, the juvenile court held the combined jurisdiction and disposition hearing. The Department submitted on its detention, jurisdiction and disposition, and supplemental reports filed with the court. Mother presented no evidence. Her counsel argued the court should dismiss the dependency petition because mother now "acknowledge[d] that she made a mistake," she had enrolled in parenting and individual counseling, and she was "willing to make an appropriate plan" for a "cool-off period" during which Joshua could stay with the maternal aunt. Mother's counsel added that Joshua is "a very strong, tall man" and, as such, mother's conduct posed "no kind of risk to him."

Joshua's counsel argued the petition should be sustained on the allegation that mother endangered Joshua by excluding him from the home and threatening him, as "the Department [had] met its burden" of proof as to that allegation. Joshua's counsel disagreed with mother's suggestion that a plan short of declaring Joshua a dependent could be worked out, observing that mother continued to blame Joshua for her own anger management issues.

4

The court sustained the jurisdictional allegation under section 300, subdivision (b), finding that mother "excluded [Joshua] from [his] home and threatened [him] with a knife," thereby endangering his physical health and safety. Based on the evidence, the court found that mother had "a lot of anger," which caused her to pick up a knife and threaten her child. As for disposition, the court found that mother's "temper" and conduct posed a substantial danger to Joshua's physical and emotional well-being, and that no reasonable means existed to protect Joshua without removing him from mother's physical custody.

## DISCUSSION

Before a dependent child may be taken from the physical custody of a parent, section 361, subdivision (c)(1) requires the juvenile court to find "clear and convincing evidence" of "a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the [parent's] physical custody."

Notwithstanding section 361's heightened proof requirement, "on appeal, the substantial evidence test applies to determine the existence of the clear and convincing standard of proof, the same as in other cases." (*In re Amos L.* (1981) 124 Cal.App.3d 1031, 1038.) "The 'clear and convincing' standard . . . is for the edification and guidance of the trial court and not a standard for appellate review. . . . [O]n appeal from a judgment required to be based upon clear and convincing evidence, 'the clear and convincing test disappears . . . [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong.' " (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880-881.)

5

Mother raises two challenges to the order removing Joshua from her physical custody. First, mother contends the court failed to adequately consider Joshua's age when the court determined returning Joshua to her physical custody would pose a substantial danger to the minor's well-being. Second, mother argues the court failed to consider other reasonable measures for protecting Joshua short of removal. Neither contention overcomes the substantial evidence in the record that supports the court's order.

With respect to mother's first contention, the evidence showed, and the trial court found, that mother threatened Joshua with a knife, she refused to take responsibility for her conduct, and this marked an escalation in an ongoing pattern of threatening Joshua and expelling him from the home. Regardless of Joshua's age or physical size, the evidence of mother's resort to a deadly weapon in a moment of anger plainly supported the juvenile court's conclusion that returning Joshua to mother's home would pose a substantial danger to his physical and mental well-being.

As for mother's second challenge, the same evidence supported the court's determination that removal was necessary, and mother failed to offer any alternatives to out of home placement that would adequately protect Joshua should mother be overcome with anger in the future. The evidence showed that mother failed to acknowledge the danger her conduct posed to her son and that she had failed to participate in programs to address her apparent anger control issues. The court also voiced its concerns about the mix of pharmaceuticals and marijuana mother took for her medical conditions, and the impact these drug combinations might be having on her behavior. All told, this evidence reasonably supported the court's conclusion that, until mother participated in therapy to address these issues, removing Joshua from her physical custody was necessary to ensure his safety.

**DISPOSITION**

The disposition order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                            KITCHING, J.

We concur:



        EDMON, P. J.



        ALDRICH, J.

7