Filed 12/20/13  In re Jasper C. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re JASPER C., A Person Coming Under the Juvenile Court Law. | B247569 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JENNIFER C., et al.,<br><br>    Defendants and Appellants. | (Los Angeles County Super. Ct. No. CK94384) |

APPEAL from orders of the Superior Court of Los Angeles County, Marilyn Mordetsky, Referee.  Affirmed.

Catherine C. Czar, under appointment by the Court of Appeal, for Defendant and Appellant Jennifer C.

Aida Aslanian, under appointment by the Court of Appeal, for Defendant and Appellant Robert E.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Kim Nemoy, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

**INTRODUCTION**

Appellants Jennifer C. (mother) and Robert E. (father and, collectively, parents) appeal from a judgment declaring their son, Jasper C., a dependent of the juvenile court. Mother and father contend the evidence was insufficient to support the juvenile court's finding that their admitted use of marijuana and methamphetamine constituted abuse of these illicit drugs that placed their then-four-month-old son at risk of physical harm. Father also challenges the juvenile court's disposition order placing Jasper in mother's custody at a residential drug treatment facility and ordering father to participate in a drug treatment program and submit to random drug testing. Father contends the order constitutes an abuse of discretion because the evidence did not establish that he was "an inadequate father nor in need of services to address his recreational drug use."

We reject mother's and father's contentions and affirm the juvenile court's jurisdiction findings and disposition order. The record amply supports the court's findings that mother and father abuse the illicit drugs in question and that their abuse, and failure to protect Jasper from the risks occasioned by the other parent's drug abuse, places their son in risk of physical harm. This is particularly so given Jasper's tender age and father's apparent unwillingness to recognize the risk of harm his drug abuse poses to Jasper's health and well-being. The record likewise supports the juvenile court's sound exercise of discretion with respect to the disposition order. The jurisdiction findings and disposition order are affirmed.

**FACTUAL AND PROCEDURAL BACKGROUND**

1.      *Initiation of Dependency Proceedings*

Jasper was born in October 2012. Mother's toxicology screening at Jasper's birth was positive for marijuana. Jasper tested negative for drugs and appeared to be healthy with no signs of withdrawal symptoms.

On October 5, 2012, the Los Angeles County Department of Children and Family Services (Department) received a referral from the Child Abuse Hotline regarding mother's positive toxicology test. The referral indicated that mother and father were nervous about the test result and that mother had admitted to a 10-year history of

2

methamphetamine addiction/abuse. Mother reported that she was a "binge user of methamphetamine"—she would use methamphetamine through the weekend, stop using for three to four weeks, and start the "binge cycle" again. She also reported using marijuana "recreationally." Mother further admitted to using methamphetamine while pregnant (two months prior to Jasper's birth) and to using marijuana 26 days before Jasper was born. Mother also reported having mental health issues, including anxiety and antisocial personality disorder. Father likewise admitted to using marijuana and alcohol recreationally.

After interviewing the parents and confirming the contents of the referral's allegations, the Department inspected the paternal grandmother's home, where the family was residing. The home appeared to be safe with appropriate items for the baby. Mother also indicated she would submit to an upfront assessment due to her mental health issues, and that she was agreeable to enrolling in an outpatient drug treatment program, submitting to random drug testing and taking parenting classes. Accordingly, the Department opted not to do a hospital hold and, instead, developed a safety plan with the parents and grandmother, which included, among other things, that mother would refrain from breast feeding until she had a clean toxicology test and grandmother would call the Department if she suspected either parent to be under the influence of drugs. Notwithstanding his cooperation with the development of the safety plan, father refused to submit to on demand drug testing.

The Department scheduled a team decision making meeting and encouraged the parents to attend. After initially indicating that they would attend, father recanted, but stated that mother would enroll in an outpatient drug treatment program and submit to random drug testing. Father reaffirmed that he would not submit to drug testing and was argumentative with the Department. The Department explained to father that, without his voluntary participation in drug testing, it would have no other choice but to file a petition with the dependency court. Father refused to submit to a drug test.

On October 22, 2012, the Department filed a Welfare and Institutions Code[1] section 300 non-detained petition on behalf of newborn Jasper. The petition alleged that mother had a history of drug use, currently uses methamphetamine and marijuana, and used both drugs during her pregnancy. The petition also alleged that father knew of mother's drug abuse, but failed to protect Jasper.[2]

The juvenile court found father to be Jasper's presumed father, retained Jasper in parental custody, and found that the Department had made a prima facie showing with respect to the section 300 allegations. The court ordered mother to submit to random drug testing and to refrain from breastfeeding Jasper until authorized by the Department after a clean drug test. Father was ordered not to smoke marijuana in the home.

Following initiation of the dependency proceeding, the Department conducted a further investigation and re-interviewed mother and father. Mother reported that she had started using drugs as a teenager after the death of her grandmother, who raised her. After failing to complete a drug rehabilitation program, mother "ended up on the streets." At four months pregnant, mother had "slipped" back into methamphetamine use, at which time father had gone to help her. Father reported that he brought mother to their current home and that he would not allow her to use methamphetamine in the home. With respect to mother's marijuana use, father explained that marijuana had been suggested as something that would help with mother's nausea during pregnancy.

---

[1]     All future statutory references are to the Welfare and Institutions Code.

[2]     The detention report recited father's criminal history, which included arrests for exhibiting a deadly weapon (1991), driving while under the influence (2004), and driving without a license (2006), and convictions for burglary (1992), weapon possession with intent to sell (1994), making threats with the intent to terrorize (2001), spousal abuse (2001, 2004), obstructing justice (2005), carrying a concealed dirk or dagger (2006), and possessing a dangerous weapon for manufacture/sale (2006).

Father also reported that he was abiding by the court's order not to smoke marijuana in the home. He nevertheless did not deny using marijuana and continued to refuse to submit to drug testing. Father maintained that his marijuana use did not affect his ability to care for Jasper.

2.    *Jasper's Detention*

On December 19, 2012, the Department removed Jasper from the parents' custody and placed him in foster care. Roughly two weeks prior to the detention, mother and the paternal grandmother had engaged in a physical altercation, in front of Jasper, after grandmother accused mother of abusing alcohol and refused to hand Jasper over to mother. Mother and grandmother reportedly were not getting along, and mother had begun feeling judged and isolated by father and grandmother. Mother also was suffering from post-partum depression, for which she was prescribed psychotropic drugs.

The Department conducted a home visit after the altercation and observed that mother was "jittery" and "rough" with Jasper. During the visit, while burping the baby, mother patted him so strongly that the social worker felt compelled to intervene.

Shortly after the physical altercation with grandmother, mother reportedly made suicidal threats in father's presence. According to father, mother had not actually threatened to kill herself, but she had "made a funny comment in the kitchen while holding a knife one day, . . . like she was getting hopeless . . . ." Father observed that some of mother's conduct was "out of character for her personality" and he had encouraged her to seek counseling.

Notwithstanding the problems in the home, on December 18, 2012, father left Jasper with mother and grandmother to meet with friends at a bar. That night, father used methamphetamine on two separate occasions. Although he admitted to using methamphetamine roughly six months earlier, father claimed this was the first time he had used methamphetamine since Jasper's birth.

The next morning, December 19, 2012, father awoke with Jasper asleep in the same room. Mother was not in the home and father was unaware of her whereabouts. As it turns out, mother left the home that morning to use methamphetamine at a friend's

house. A drug test conducted later that day confirmed that mother also had ingested ecstasy, though mother claimed she did not knowingly take the drug and suggested the methamphetamine must have been laced with ecstasy.

After mother returned home on December 19, 2012, father dropped her and Jasper off at mother's drug treatment class. When father returned to pick them up, he was unable to find them at their customary pick-up spot. Father contacted the Department and made a police report, fearing that mother had fled with Jasper. Father reported to the Department social worker that he was "prepared for the worst" due to mother's threats of suicide and "was thinking that he should be searching the desert for the Mother and his child not knowing if they were dead or alive."

While father made a police report, the social worker learned that mother had remained in the drug treatment facility in hopes of enrolling in a residential treatment program. Mother told the social worker that she could not stay in the home with father and grandmother as "everyone was using drugs there." Mother admitted that she was using methamphetamine and claimed that father was "forcing her to use the drug so that she could not get custody of the baby." Mother also stated that the paternal grandmother was smoking marijuana. Mother later said she was using because of the "environment the Father and [the paternal grandmother] had created in the home."

After receiving mother's report, the social worker asked father if he would submit to a drug test, at which time father admitted he too was using methamphetamine. The paternal grandmother also confirmed she had used marijuana. Mother and father were drug tested. Father tested positive for methamphetamine and marijuana. Mother tested positive for ecstasy, methamphetamine and marijuana.

On December 24, 2012, the Department filed an amended detention petition. The Department recommended a suitable placement in foster care due to father's failure to report mother's suicidal ideations; father leaving Jasper in mother's care while she was under the influence of methamphetamine, ecstasy and marijuana; and both parents' use of methamphetamine. The juvenile court detained Jasper in the Department's custody and ordered monitored visits for the parents.

6

3. *The Jurisdiction and Disposition Hearing*

The combined jurisdiction and disposition hearing commenced on January 29, 2013. The juvenile court received the Department's reports and a letter confirming mother's enrollment in a residential drug treatment program. The court then heard testimony from the parents.

Mother testified that Jasper had been healthy since birth. Prior to his detention, mother and father were his primary caretakers and ensured that all his basic needs were met. Mother believed that she and father could provide proper care for the baby. Mother also testified that the paternal grandmother was a suitable caretaker.

Mother originally testified that the incident on December 19, 2012 was the only time she had used methamphetamine since Jasper's birth. Mother later admitted to using methamphetamine at least two other times. The latest instance was on January 17, 2013. Mother enrolled in a residential drug treatment program the same day. Mother claimed she never used methamphetamine in the home. While she knew father used methamphetamine, she claimed they never used together and that she had not seen him use the drug. She testified father did not act any differently while under the influence.

Mother admitted to ongoing marijuana use, but claimed she used it only outside the home or in the garage. However, she admitted she would come back into the house immediately after consuming the drug and that she cared for Jasper while under the influence.

Mother denied telling the social worker that she used methamphetamine because of the negative home environment created by father and grandmother. She also denied ever contemplating suicide. Mother confirmed that she had suffered from post-partum depression, but testified that her depression had resolved after two weeks.

Mother requested to have Jasper released to her custody at the residential drug treatment facility. She testified that she was motivated to complete her treatment because of Jasper.

Father's testimony, particularly under cross examination, was often equivocal and evasive. With respect to the December 19, 2012 incident, father testified that he had become concerned about mother and Jasper after waiting outside mother's drug treatment class for only five minutes. When questioned about why he had become so alarmed in such a short span of time, father did not reply directly and offered confused explanations for why he felt it was necessary to immediately contact the police. He denied that he was concerned mother had fled with Jasper. He also denied being concerned due to mother mentioning suicide. Father acknowledged he had been concerned about mother's post-partum depression prior to the incident, but claimed that "she was actually starting to balance out by that time." When pressed about why he had called the police after five minutes, father gave a convoluted response about employees at the treatment facility lying to him.

Despite his concerns about mother's post-partum depression, father admitted that he had left Jasper with mother and grandmother the previous night to go out with friends and use methamphetamine. Father acknowledged making a statement to a social worker that his "meth use is under control," but claimed the statement was taken out of context. He characterized his use as "a recreational thing"—"just a social thing" he did on motorcycle runs or at festivals with friends. Father admitted to using the drug recreationally since 1990.

Father testified that he smoked marijuana a "couple times a week," in part because he was not currently working and his "schedule is real free right now." He denied knowing that mother smoked marijuana in the garage or that she cared for the baby while under the influence. He nevertheless testified that mother's marijuana use did not concern him because he also smoked recreationally. With respect to mother's depression and his willingness to go out and use methamphetamine with friends while she cared for Jasper, father testified that he was "not her keeper, her babysitter" and, thus, he saw no reason to cancel his plans.

8

Father unequivocally maintained that he did not have a drug problem and denied needing treatment. While he said he was willing to drug test, he would not commit to entering a drug treatment program if a test came back dirty. Father testified that he does not consider testing positive for marijuana to be a "dirty" test.

Closing arguments largely focused on whether mother's and father's admitted drug use constituted substance abuse, and whether their drug use posed a risk to Jasper's physical well-being. Jasper's attorney joined with the Department in arguing that both parents were drug abusers, citing the fact that mother admitted to her drug problem and had sought treatment for it, while father denied having a drug problem, even though he cared for the baby while under the influence.

The juvenile court found the parents were drug abusers and concluded this was prima facie evidence of risk to Jasper given his young age. With respect to father, the court focused on how father minimized his own drug use, as well as the potential harm that mother's drug use posed to Jasper. The court observed that "[a] parent has a duty to protect their child and know what's going on with their child. It is not okay for a parent to go out and binge and use methamphetamine . . . and then say that they didn't know what was going on with their child, [that he is] not the mother's keeper . . . ." "How [this] conduct by these parents doesn't place an infant at substantial risk of harm clearly is something the court can't even entertain or understand."

The court nevertheless found the parents differently situated because mother was in an inpatient drug treatment program. The court declared Jasper a dependent under section 300, subdivision (b), and placed him in mother's custody at her inpatient program on the condition that she continue to test negative for drugs and remain program-compliant. The court removed Jasper from father's custody, ordered monitored visitation, outside of mother's presence, and that father participate in a drug treatment program, parent education and individual counseling.

9

# DISCUSSION

1.    *The Jurisdictional Findings Are Supported by Substantial Evidence*

Mother and father contend the evidence was insufficient to establish a causal link between their admitted drug use and any risk of physical harm to Jasper. Father also contends the evidence failed to establish his "recreational" drug use constituted drug "abuse" under our recent opinion in *In re Drake M.* (2012) 211 Cal.App.4th 754 (*Drake M.*). With respect to risk of harm, both parents point to the fact that, despite mother's admitted use of methamphetamine and marijuana during her pregnancy, Jasper was born full term, healthy, and free of any symptoms of withdrawal. Parents also contend that no risk of harm was established because the evidence showed that Jasper was "a well cared for and healthy baby, with no signs of abuse or neglect" during the time he was in parents' care and custody. Finally, both parents argue the evidence failed to establish that they could prevent the other parent's drug use. Thus, the parents contend the failure to protect findings were unsupported. We reject each of these contentions and hold that the juvenile court's jurisdictional findings were amply supported by the evidence.

"The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2.) Thus, section 300, subdivision (b), creates juvenile court jurisdiction where it is shown that a "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, . . . or by the willful or negligent failure of the child's parent . . . to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, . . . or by the inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse."

10

In this case, the juvenile court found the following under section 300, subdivision (b): "[M]other . . . is a current user of methamphetamine and marijuana, which renders the mother unable to provide regular care and supervision of the child. The mother used methamphetamine and marijuana during her pregnancy . . . . Further, the mother abuses alcohol while caring for the child and the mother has suicidal ideation. The child's father . . . knew or reasonably should have known of the mother's illicit drug use [and suicidal ideation] and failed to protect the child. . . . Such illicit drug and alcohol use and suicidal ideation by the mother and the father's failure to protect the child endangers the child's physical health and safety and places the child at risk of physical harm, damage, and failure to protect. [¶] . . . [F]ather . . . is a current user of methamphetamine and marijuana, which renders the father unable to provide regular care and supervision of the child. . . . The child's mother . . . knew or reasonably should have known of the father's illicit drug use and failed to protect the child. Such illicit drug use by the [father] and the [mother's] failure to protect the child endangers the child's physical health and safety and places the child at risk of physical harm, damage, and failure to protect."

"In reviewing the jurisdictional findings . . . , we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court. [Citation.]" (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)

We begin with father's contention that the evidence was insufficient to establish his "recreational" drug use constituted drug "abuse" under our opinion in *Drake M., supra,* 211 Cal.App.4th 754. In *Drake M.*, we reaffirmed that "the mere usage of drugs by a parent is not a sufficient basis on which dependency jurisdiction can be found" (*id.* at p. 764), and held that "a finding of substance abuse for purposes of section 300, subdivision (b), must be based on evidence sufficient to . . . establish that the parent or guardian at issue has a current substance abuse problem as defined in the [American

11

Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th rev. ed. 2000 (DSM-IV-TR)]" (*id.* at p. 766). We quoted "[t]he full definition of 'substance abuse' found in the DSM-IV-TR[,] [which] describes the condition as '[a] maladaptive pattern of substance use leading to clinically significant impairment or distress, as manifested by one (or more) of the following, occurring within a 12-month period: [¶] (1) recurrent substance use resulting in a failure to fulfill major role obligations at work, school, or home (e.g., repeated absences or poor work performance related to substance use; substance-related absences, suspensions, or expulsions from school; neglect of children or household)[; ¶] (2) recurrent substance use in situations in which it is physically hazardous (e.g., driving an automobile or operating a machine when impaired by substance use)[; ¶] (3) recurrent substance-related legal problems (e.g., arrests for substance-related disorderly conduct)[; and ¶] (4) continued substance use despite having persistent or recurrent social or interpersonal problems caused or exacerbated by the effects of the substance (e.g., arguments with spouse about consequences of intoxication, physical fights).' " (*Ibid.*, quoting DSM-IV-TR, p. 199.) We concluded the evidence was insufficient to establish that the father's use of prescribed medical marijuana to treat his chronic knee pain constituted "substance abuse" under this definition. In so concluding, we relied on undisputed evidence showing that the father had been employed for many years, had no criminal history, and did not operate a motor vehicle or care for the child within a minimum of four hours after ingesting marijuana.[3] (*Id.* at pp. 767-768.)

Unlike the record in *Drake M.*, in this case, substantial evidence supports the juvenile court's finding that father is a substance abuser. Indeed, the most salient manifestation of parental substance abuse in the context of a dependency proceeding is present here—father's drug use has resulted in " 'a failure to fulfill major role obligations at . . . home (e.g., . . . neglect of children or household) . . . .' " (*Drake M., supra,*

---

[3]     With respect to this last point, we also noted that the Department had failed to present "evidence showing that a person remains under the influence of marijuana four hours after smoking it from which it could be inferred that father was still under the influence." (*Drake M., supra,* 211 Cal.App.4th at p. 767.)

211 Cal.App.4th at p. 766, quoting DSM-IV-TR, p. 199.) It is undisputed that on the evening of December 18, 2012, father left Jasper with mother and grandmother to meet friends at a bar and use methamphetamine. Roughly two weeks prior, mother and grandmother had engaged in a physical altercation, in Jasper's presence, stemming from grandmother's refusal to hand Jasper over to mother due to mother's substance abuse issues. Father testified that, following the altercation, mother had "made a funny comment in the kitchen while holding a knife one day, . . . like she was getting hopeless" and that he had encouraged her to seek counseling because her conduct was "out of character for her personality." Notwithstanding the potential danger mother's "hopeless" mental state posed to Jasper, father stated that he saw no reason to cancel his plans to use methamphetamine with friends because he was "not [mother's] keeper, [or] her babysitter."

The evidence suggests still more problems at home related to substance abuse. The day after father admits to having used methamphetamine, mother surreptitiously deserted father at their appointed meeting place and sought assistance with enrolling in a residential drug treatment program. At the time, mother stated she could not go back to the home with father because "everyone was using drugs there." Mother also claimed that father was "forcing her to use [methamphetamine] so that she could not get custody of the baby." Father's reaction upon not finding mother and Jasper at their customary meeting place suggests that conditions at the home were such that he should not have left Jasper alone with mother and grandmother to use methamphetamine the previous night— father immediately called the police and reported to a Department social worker that he was "prepared for the worst" and "was thinking that he should be searching the desert for the Mother and his child not knowing if they were dead or alive."

Moreover, while the record contains only one positive methamphetamine test, this very well may be due to the fact that father refused to take every other drug test requested by the Department. Thus, unlike in *Drake M.*, where the father "stated that he was willing to do whatever was necessary to prevent Drake's removal from his custody . . . [and] agreed to take on-demand drug screens" (*Drake M., supra,*

13

211 Cal.App.4th at p. 759), here, a reasonable inference could be drawn that father's methamphetamine use was more frequent than the "recreational" use he claimed. All told, the record amply supports the juvenile court's finding that father is a substance abuser.

Our opinion in *Drake M.* also disposes of parents' contention that the evidence was insufficient to establish their substance abuse posed a risk of physical harm to Jasper. In *Drake M.* we observed that there are cases in which children are " 'of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety. [Citations.]' " (*Drake M., supra,* 211 Cal.App.4th at p. 767, quoting *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.) In such cases, we held that "the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm." (*Drake M.*, at p. 767.) The child in *Drake M.* "was only 14 months old." (*Ibid.*) Thus, we recognized that the Department "needed only to produce sufficient evidence that father was a substance abuser in order for dependency jurisdiction to be properly found." (*Ibid.*)

Here, at the time the jurisdictional findings were made, Jasper was only four-months-old. The evidence established that father and mother were substance abusers; indeed, mother does not contend otherwise on appeal. Given Jasper's tender years, the evidence of parents' substance abuse—including, among other things, mother's use of methamphetamine and marijuana during her pregnancy and both parents' continued use of these illicit substances during the dependency proceedings—is prima facie evidence of their inability to provide regular care resulting in a substantial risk of physical harm to Jasper.

To be sure, it is fortunate that Jasper apparently has not suffered physical harm as a result of his parents' substance abuse to this point. But the purpose of dependency proceedings is to prevent harm, not ignore risk. (See *In re Eric B.* (1987) 189 Cal.App.3d 996, 1003 [rejecting parents' contention that "would logically exclude legitimacy to state action which is intended to prevent harm"].) As section 19 states, "[i]t is the purpose of this code, . . . to provide protective services to the fullest extent deemed necessary by the

juvenile court . . . to insure that the rights or physical, mental or moral welfare of children are not violated *or threatened* by their present circumstances or environment." (Italics added.) "The idea that state authority can be mobilized only after the fact is untenable. . . . The state, having substantial interests in preventing the consequences caused by a perceived danger is not helpless to act until that danger has matured into certainty. Reasonable apprehension stands as an accepted basis for the exercise of state power." (*In re Eric B.*, at p. 1003.) While Jasper's good health is fortunate, it does not negate the substantial risk that parents' substance abuse poses to his continued physical, mental and moral welfare.

Lastly, father and mother contend the Department "failed to present substantial evidence that [they] could prevent [the other parent's] drug use [or] drinking . . . ." Because they could not prevent the other's drug use, father and mother argue the evidence was insufficient to establish "a failure . . . to protect [their] son, subjecting Jasper to risk of substantial physical abuse and harm . . . ." We are not persuaded. If father and mother admit they are unable or unwilling to prevent the other's drug abuse and the substantial risk it poses to their child's health and well-being, then the juvenile court truly had no choice but to assume jurisdiction to order parents into treatment and ensure that Jasper is protected. The jurisdictional findings are affirmed.

2. *The Disposition Order Was Not an Abuse of Discretion*

Father contends the juvenile court abused its discretion by removing Jasper from his custody, placing Jasper with mother at a residential drug treatment facility, and ordering father to participate in drug treatment and parenting classes. Father contends the Department failed to establish by clear and convincing evidence that removal was necessary to safeguard Jasper, and he argues the services ordered will "not address or assist father with any shortcomings which supported dependency." We disagree.

"The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion." (*In re Baby Boy H*. (1998) 63 Cal.App.4th 470, 474.) In reviewing an order for abuse of discretion,

15

we " 'must consider all the evidence, draw all reasonable inferences, and resolve all evidentiary conflicts, in a light most favorable to the trial court's ruling.[4] [Citation.] The precise test is whether any rational trier of fact could conclude that the trial court order advanced the best interests of the child.' " (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.) "The trial court is accorded wide discretion and its determination will not be disturbed on appeal absent 'a manifest showing of abuse.' [Citation.]" (*Ibid*.)

We have no trouble concluding that the juvenile court's disposition order constituted a reasonable exercise of discretion, rationally tailored to advancing Jasper's best interests. As we explained, the evidence established that father's and mother's continuing drug abuse posed a substantial risk to Jasper in light of his very young age. Mother sought to ameliorate her substance abuse problem by enrolling in a residential drug treatment program—a decision that she stated was largely motivated by the fact that "everyone was using drugs" at the home she shared with father. Father, on the other hand, continues to deny that he has a drug abuse problem. Even at the disposition hearing, father refused to commit to entering a drug treatment program if he tested positive for controlled substances. The juvenile court reasonably concluded that permitting father to share joint custody while mother resided at a sober living facility risked subjecting Jasper to the pattern of drug abuse that required the court to assume jurisdiction in the first instance.

---

4    This standard of review applies notwithstanding the requirement that an order removing a child from the physical custody of a parent must be based on "clear and convincing evidence." (See § 361, subd. (c).) "The 'clear and convincing' standard . . . is for the edification and guidance of the trial court and not a standard for appellate review." (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880.) "[O]n appeal from a judgment required to be based upon clear and convincing evidence, 'the clear and convincing test disappears . . . [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong.' [Citation.]" (*Id.* at p. 881.)

Father's attitude toward his and mother's drug abuse likewise supports the court's order requiring father to attend parenting and drug treatment classes. Among other things, father testified that he was not concerned about mother caring for Jasper while under the influence of marijuana because he also smoked the drug recreationally. Father refused to drug test, he continued to smoke marijuana "a couple times a week," he left Jasper at home with mother, knowing that she was feeling "hopeless" and isolated, to use methamphetamine with friends, and he did all this while his family was under the supervision of the Department and juvenile court. The juvenile court reasonably concluded that parenting and drug treatment classes were necessary to eliminate the conditions that led to Jasper's dependency status. (See § 362, subd. (d).) We find no abuse of discretion.

## DISPOSITION

The jurisdictional findings and disposition order are affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



KITCHING, J.

We concur:



KLEIN, P. J.



ALDRICH, J.

17