Filed 4/22/15  C.K. v. Super. Ct. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| C.K., <br><br>    Petitioner, <br><br> v. <br><br> SAN LUIS OBISPO COUNTY SUPERIOR COURT, <br><br>    Respondent; <br><br> SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br>    Real Party in Interest. | 2d Civ. No. B261407 <br> (Super. Ct. No. JV51905) <br> (San Luis Obispo County) |

C.K. (mother) challenges an order of the juvenile court terminating reunification services and setting a permanent plan hearing regarding her minor child C.V. (minor).  (Welf. & Inst. Code, §§ 366.26, subd. (c), 388.)[1]  We deny her petition for extraordinary writ.

---

[1] All further statutory references are to the Welfare and Institutions Code.

## FACTUAL AND PROCEDURAL HISTORY

### *Detention*

When minor was two months old, the San Luis Obispo County Department of Social Services (DSS or the Department) filed a dependency petition alleging her parents failed to protect her due to substance abuse problems and ongoing domestic violence between them. (§ 300, subd. (b).) The detention report stated that approximately two weeks before the petition, while mother was holding minor, mother and T.V. (father) engaged in a physical altercation that resulted in his arrest. An imminent risk team decision-making meeting was held. The parents signed a safety plan agreeing to refrain from further substance abuse and domestic violence. Father agreed not to have contact with minor unless supervised by the paternal grandmother. Later that day father used methamphetamine. With minor in their care, mother and father spent the weekend in a motel in Atascadero where they used methamphetamine and reportedly argued. Mother reportedly drank alcohol. Both parents failed to show up for drug testing. The juvenile court ordered minor's detention and placement in a suitable home.

### *Jurisdictional and Dispositional Hearing*

At the combined jurisdictional and dispositional hearing, mother and father submitted on DSS's recommendation of six months of reunification services. There were reports that they continued to fight on a regular basis. Mother denied having an alcohol problem but could not explain why she continued to drink knowing that it violated the terms and conditions of her probation or parole. Father admitted having a drug problem and continuing to use drugs and claimed to be looking for a residential treatment center. Mother's minimization of and lack of insight into her substance abuse was "[o]f great concern" to DSS. It was also concerned with mother's stated unwillingness to separate from father despite her awareness of his continued drug use and the continued verbal and physical altercations between them. The juvenile court found that minor's parents had minimally complied with the case plan and ordered six months of reunification services with supervised visits for each parent.

Three months later, DSS reported that mother had been testing negative for alcohol and drugs. Mother denied having a problem. She did not enter residential recovery services as recommended by DSS because they "have too many rules" and "really mess people up." She contacted RISE for domestic violence treatment services and was directed to a weekly support group in Paso Robles and individual counseling in Atascadero. Mother often showed up late to supervised visits with minor and brought along other adults. She seemed more interested in talking with these other adults than attending her child. Father was in residential treatment for drug and alcohol abuse at Victory Outreach in Vallejo after being arrested for an altercation with mother. Although both parents had recently and "with some resistance and reluctance" engaged in services, DSS concluded that their denial of problems with substance abuse and domestic violence was "the single greatest barrier to their progress in reunifying with their child."

*Six-Month Review Hearing*

At the time of the six-month review hearing, mother resided in Paso Robles at Gryphon House, a sober living home. She was participating in drug and alcohol services (DAS) and had tested clean for seven weeks. She had not begun domestic violence counseling with RISE but had addressed setting appropriate boundaries in intimate relationships in her substance abuse counseling. She was having regular visits with minor and had enrolled in family treatment court and the perinatal outpatient extended group (POEG) program. She was allowed to have unsupervised visits with minor during the week. DSS reported that mother's care of her daughter during these visits had "gradually improved" and it was "cautiously optimistic" that mother could reunify with minor if she continued to progress in services and obtained a stable source of income and appropriate housing. Father was in jail for a probation violation. Prior to that, he was in Gryphon House in Atascadero. DSS concluded that he had "much work to do to stabilize his own life in light of his mental health, criminal and substance abuse issues before he will be in the position to parent a young child."

The juvenile court found that mother had substantially complied with the case plan and there was a substantial probability that minor might be returned to her.

3

Pursuant to DSS's recommendation, the court ordered six more months of reunification services and set a date for a 12-month review hearing. The court ordered mother to comply with the case plan, including participation in mental health counseling regarding domestic violence, adherence to the recommended DAS treatment plan, and submission to random drug testing. In addition, the court prohibited the parents from visiting minor together without specific DSS approval.

*The 30-Day Visit*

Six weeks before the 12-month review hearing, mother requested approval of a 30-day visit with minor. Minor's caretakers and attorney opposed the visit. The caretakers requested de facto parent status. They observed that when mother came to pick up her daughter, minor "[al]most always runs away from her" and leaves "unwillingly and in tears." On more than one occasion while holding minor, who was crying, mother became "verbally aggressive and physically intimidating" towards the caretakers. Her boyfriend at the time, G.V., had "an extensive . . . history of alcohol abuse and domestic violence." The caretakers felt that mother was not developing a bond with her child and was refusing opportunities to spend time with minor and them outside of the scheduled visits. They believed she had "consistently had a difficult time putting [minor's] needs above her wants." One day when mother had to appear in court, she left minor in the care of a fellow resident at Gryphon House rather than, as the social worker recommended, the familiar environment of day care. The next day the caretakers noticed minor had a bite mark and scrape on her back.

Based on the social worker's recommendation, DSS notified the court that it intended to seek family maintenance services for mother. DSS reported that mother had "made remarkable progress" and it anticipated she would begin a 30-day visit with minor around the time of the 12-month hearing if she continued to achieve her treatment goals. Mother continued to participate in substance abuse treatment. She was still living at Gryphon House and participating in family treatment court and POEG. She was attending 12-step meetings and had found an Alcoholics Anonymous sponsor. In addition, she reported securing employment at Walmart in Paso Robles and applying for

4

low-income housing with a plan to apply for housing in Upham Apartments when she exited Gryphon House. She claimed to be participating in domestic violence counseling with the RISE program in Paso Robles. DSS could not corroborate the caretakers' concerns about G.V. and mother's spending her visitation time with minor in his company. Although in general mother was "cooperative with taking parenting direction and [was] observed showing appropriate care of [minor]," a social worker expressed concern that mother did not respond to minor's cues during a doctor's visit. A week before the 12-month hearing, the parties reached a mediated agreement that mother would take minor for a 30-day visit beginning the week after the hearing.

*Twelve-Month Permanency Hearing*

At the 12-month hearing, DSS recommended that the court continue jurisdiction over minor and order six more months of reunification services. It reported that "although [mother] has followed the letter of the Case Plan, she still lags behind with the insight needed to keep [minor] safe in her care." DSS cited recent incidents in which mother stated that she planned to continue her relationship with G.V. in spite of children's services' concerns about him, failed to report minor's unexplained injury in a timely manner, and left minor in the care of a Gryphon House resident rather than the licensed day care provider who was available to her. It cited two remaining barriers to mother's safe reunification with minor. First, minor was "not adjusting well to her mother's care" as evidenced by minor's aggressive behavior and dysregulation. DSS noted that this concern was "hard to substantiate" and may simply reflect the difficulty of transitions for most children of minor's age. The second concern was mother's "lack of insight in regard to her child's safety and well-being." Because mother had "made great strides in her insight" and had "established an honest rapport with her current Domestic Violence counselor to allow this personal growth to continue," DSS anticipated that minor could be returned to mother's care if mother continued to follow the case plan.

The juvenile court found that mother had made substantial progress and there was a substantial probability that minor would be returned to her. The court set

dates for an 18-month permanency hearing and, in the interim, a progress hearing in one month at the end of the 30-day visit.

<em>Termination of Reunification Services</em>

In preparation for the progress hearing, DSS expressed concern that mother and father "appear to be reconciling their relationship" yet father "does not appear to be participating in his case plan activities that would provide safety and stability for his daughter." It noted that mother had received a "three day notice" at Gryphon House for not completing her chores satisfactorily, but that the notice had been rescinded. Mother wanted to move out of her sober living residence and her treatment team agreed that she was ready but it had not yet approved a new residence. DSS recommended that minor remain on an extended visitation with mother and that another interim review hearing be scheduled in 30 days with the expectation that it would be recommending family maintenance at that time.

One week after the progress hearing, DSS, joined by minor's counsel and county counsel, requested that the juvenile court terminate reunification services. It asserted that mother had "failed to adequately demonstrate she can protect [minor] from additional exposure to aggressive behaviors and individuals from whom she has been ordered to have no contact with." DSS received a report of child abuse because mother was allowing both G.V. and father to be in the residence with minor. It cited an incident the week before where both men were at the residence together, "had a verbal argument and postured to fight." Mother's case plan specifically identified G.V. as an individual who may not be around minor due to his "violent criminal background." In addition, mother was not approved to supervise visits between father and minor because "his sobriety has not yet been confirmed." Mother admitted that she had spent time with father and minor that day, but stated that it was a onetime occurrence. Minor was not at home during the altercation between father and G.V. because she was on a visit with her caretaker.

DSS subsequently reported that mother continued to spend time with G.V. despite claiming that she was not pursuing a relationship with him and was seeking a

6

protective order to keep him away from her. In addition, mother moved to a residence that DSS did not approve and that was not suitable for minor because there were "ongoing reports of domestic violence and drug use of the adults and juveniles in the residence." Father's mother found him semiconscious with a needle in his arm and brought him to a residential "detox" program, which he left shortly thereafter. He was "exited" from DAS for continued failure to show up for drug screens and was twice "exited" from Gryphon House. Minor was placed back with her caretakers. She showed fear of both father and mother at supervised visitations.

The juvenile court found that, based on this new evidence, reunification services were no longer in the best interests of minor. The court granted the section 388 petition, terminated reunification services for both parents, and set a section 366.26 hearing on May 6, 2015. The case plan goal for minor is now adoption.

DISCUSSION

Mother seeks to vacate the juvenile court's order terminating reunification services and to have them reinstated. She contends that there was no change in circumstances or new evidence to support DSS's section 388 petition and that substantial evidence does not support the juvenile court's finding that minor cannot be safely placed with mother at the 18-month date.

"'At the hearing on the petition pursuant to section 388, the juvenile court's task was to determine whether the Department had demonstrated by a preponderance of the evidence that there was new evidence or a change of circumstances demonstrating that it was in [the child's] best interests that the previous . . . order, [which provided for reunification services for mother], be changed, modified or set aside. [Citations.] . . . The petition is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion. [Citations.]' [Citation.]" (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 877-878.)

"We review an order terminating reunification services to determine if it is supported by substantial evidence. [Citation.] In making this determination, we review the record in the light most favorable to the court's determinations and draw all

7

reasonable inferences from the evidence to support the findings and orders. [Citation.] 'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.' [Citation.]" (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688-689.)

Here, the juvenile court explained that this was a case in which there were two "tiers" of issues that mother needed to address. Although the court recognized the "amazing things" she had done in terms of addressing her substance abuse problems, it found that she had not crossed the "interrelationships" tier. It found that after more than a year of reunification services mother had failed to address her domestic violence issues by staying away from inappropriate men. The court further found that with less than two months before the 18-month hearing, mother would not be in a position to safely reunify at that time. New and substantial evidence supports these conclusions.

At the 12-month permanency hearing, the extension of reunification services was conditioned on mother's adherence to the case plan, which prohibited her from "engaging in a relationship or having significant contact with individuals with a history of domestic violence." In particular, mother was told by the social worker and reminded at the 12-month hearing that she is not authorized to supervise visits between minor and father. The next day, father and G.V. were at her residence and became embroiled in a verbal and nearly physical argument. Three days later when the social worker showed up at mother's residence unannounced, mother's roommate reported that mother and father were out on a walk. The roommate had observed mother with father on two occasions that week, during one of which they were in the apartment with minor. According to the caretaker, father stayed at mother's home after the incident with G.V. and once, with minor present, threw down his backpack and threatened to "beat this guy's ass."

Mother also continued to see G.V. despite claiming to be working on getting a protective order to keep him away from her. A month after the 12-month hearing she was seen walking with him along the Paso Robles winter parade route and, later, coming out his front door from inside his residence and standing on his front porch.

8

Even if, as mother claimed, she was walking with and visiting a different friend, her decision to place herself in such close proximity to G.V. supports the trial court's finding that her choices were not in minor's best interests.

Substantial evidence supports the juvenile court's finding that minor could not be safely returned to mother. The trial court did not abuse its discretion in granting the section 388 petition terminating reunification services.

DISPOSITION

The petition for extraordinary writ is denied.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

9

Linda D. Hurst, Judge

Superior Court County of San Luis Obispo

_____

Mary Ann Foster for Petitioner.

No appearance for Respondent.

Rita L. Neal, County Counsel, Leslie H. Kraut, Deputy County Counsel, for Real Party in Interest.