Filed 5/19/15  In re Jesse L. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re JESSE L., a Person Coming Under the Juvenile Court Law. | B258615<br><br>(Los Angeles County<br>Super. Ct. No. DK05543) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ASHLEIGH L.,<br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Jessica S. Mitchell, Deputy County Counsel.

_____

The juvenile court sustained a petition pursuant to Welfare and Institutions Code section 300, subdivisions (a) (serious physical harm inflicted nonaccidentally) and (b) (failure to protect)[1] and declared then eight-year-old Jesse L. a dependent child of the court based on several acts of physical abuse by Jesse's mother, Ashleigh L., and the mother's boyfriend, Jesus F. The allegation that Jesse L.'s father, Jesse P., had failed to protect the child was dismissed. The court removed Jesse from Ashleigh's custody and placed him with his father and ordered family maintenance services for both parents.

Ashleigh appeals from the disposition order, arguing the evidence is insufficient to support the court's findings Jesse would be in substantial danger if returned to Ashleigh's care and there were no reasonable alternatives to removing him from her custody. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Jesse was removed from Ashleigh and taken into protective custody by the Los Angeles County Department of Children and Family Services (Department) on June 13, 2014 following an investigation that had begun two weeks earlier after a referral from Jesse's school reporting he had been physically abused by Ashleigh. The Department filed a section 300 petition, and on June 18, 2014 the juvenile court found a prima facie showing had been made that Jesse came within section 300, subdivisions (a) and (b), and continuance in Ashleigh's home would be contrary to his welfare. Jesse P. was found to be Jesse's presumed father, and Jesse was released to him. Both parents were provided family maintenance services. Ashleigh's visitation with Jesse was to be monitored.

At the contested jurisdiction hearing on July 23, 2014 the court admitted into evidence the Department's June 18, 2014 detention report with attachments and its July 23, 2014 jurisdiction/disposition report with attachments and heard brief, live testimony from Ashleigh. At the conclusion of the evidentiary presentation the court sustained the section 300 petition, as amended by interlineation. Specifically, as to

---

[1] Statutory references are to this code.

2

counts a-1 and b-1 the court found true the following allegations: "In May of 2014, the child Jesse[']s mother, Ashleigh [L.] physically abused the child by pulling the child's ear inflicting marks and bruises to the child's ear. In April of 2014, the mother struck the child's body with a belt. Such physical abuse was excessive and caused the child unreasonable pain and suffering. . . ." As to count b-2 the court found true the following allegations: "On a prior occasion, the child Jesse[']s mother, Ashleigh L[.]'s male companion, Jesus F[.], physically abused the child by slapping the child's head with the male companion's hand inflicting marks and bruises to the child's ear and head. Such physical abuse was excessive and caused the child unreasonable pain and suffering. The child's mother, Ashleigh L[.], failed to protect the child when she knew that the child was being physically abused by the male companion. . . ." The court struck the allegations that Jesse P. had failed to protect Jesse when he knew Jesse was being physically abused by Ashleigh.

Immediately after the jurisdiction hearing the court heard argument regarding disposition. Ashleigh argued the Department had failed to meet its burden to justify removing Jesse from her custody. Jesse's counsel asked the court to remove Jesse from Ashleigh, release him to Jesse P. and terminate dependency jurisdiction with a family law order giving Jesse P. full legal and physical custody of the child. Jesse P. joined in the argument of Jesse's counsel. The Department urged the court to remove Jesse from Ashleigh and place him with Jesse P. with a home-of-parent order, retaining jurisdiction and providing services to both parents.

The court declared Jesse a dependent of the court and found by clear and convincing evidence that removal from Ashleigh was appropriate. Jesse was placed with his father subject to supervision by the Department; both parents were ordered to receive family maintenance services, which included an anger management program and parenting classes regarding special needs children for Ashleigh. Ashleigh's visits remained monitored, but the Department was given discretion to allow unmonitored visits once she had completed her programs and demonstrated an understanding of the case

3

issues that had led to Jesse's injuries. The court ordered that Jesse was to have no contact with Jesus F.

Ashleigh filed a timely notice of appeal. Before this court Ashleigh does not challenge the juvenile court's jurisdiction findings, arguing only that the evidence did not support Jesse's removal from her custody.

## DISCUSSION

1. *Standard of Review*

The burden of proof at disposition to remove a child from the physical custody of his or her parent is clear and convincing evidence. (§ 361, subd. (c).) Nonetheless, we review the disposition order for substantial evidence: "The 'clear and convincing' standard . . . is for the edification and guidance of the trial court and not a standard for appellate review. [Citations.] '"The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal."'" (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880-881; accord, *In re Quentin H.* (2014) 230 Cal.App.4th 608, 613; *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216, fn. 4.) Under this standard "[w]e review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible." (*In re David M.* (2005) 134 Cal.App.4th 822, 828; accord, *In re Quentin H.*, at p. 613.)

2. *Substantial Evidence Supports the Disposition Order Removing Jesse from Ashleigh's Custody*

The juvenile court's decision to remove Jesse from Ashleigh's care and custody and its implied finding there were no reasonable alternatives to removal were supported by sufficient evidence of Ashleigh's poor parenting, which included inappropriate physical discipline; her apparent inability to adequately meet Jesse's special needs; and

4

her unwillingness to end a relationship with Jesus F., who had also physically abused Jesse.

In addition to supporting the specific allegations in the petition that Ashleigh had pulled or pinched Jesse's ears, leaving bruises, while he was having a tantrum on a train (the incident that had prompted the referral from Jesse's school) and had on an earlier occasion struck him with a belt when he was acting out, the Department reports admitted into evidence established that Jesse has Attention Deficit Hyperactivity Disorder (ADHD) and had frequent behavior issues at school and at home. Ashleigh admitted she often did not give Jesse his ADHD medication, complaining it made him sleepy. Jesse's school principal reported the child had an emotional disturbance and "OHI" ("other health impairment") and, when not on medication, "yells, makes funny noises, throws himself on the ground, hits his head on the table, and attacks other students."

Notwithstanding having previously attended parenting classes and been educated on child abuse and neglect laws in connection with a prior dependency referral, Ashleigh had difficulty dealing with Jesse's misconduct and conceded she needed help. According to the detention report, Ashleigh acknowledged that what she had done was not right "but does not know how to discipline Jesse when he has this type of meltdown." She subsequently stated, "It happened in a time when I was feeling very overwhelmed with everything that I was going through and his bad behavior was not helping."

The Department's reports also stated that Jesse had disclosed during a forensic examination at LAC+USC Medical Center during the Department's initial investigation that he had been hit in the face with an open hand by Jesus F., who admitted he had "smacked" Jesse. Jesus F. on occasion also threatened to have Jesse beaten by other children in an attempt to control his behavior.[2] (Jesus F.'s own children had been

---

[2] The June 18, 2014 detention report stated, "Although [Jesus F.] reported he does not discipline Jesse, he stated that when Jesse gets out of control, Mr. [F.] threatens to have other children beat child up. Mr. [F.] tells Jesse he does not care if he goes to prison, but he will make sure he gives Jesse a whooping he will remember. Mr. F[.] denied having ever acted on his threat. Mr. [F.] denied having recently hit Jesse. He

5

removed from his care after he struck his then four-year-old son in the head with a belt, causing an injury that required stitches.) Confronted with the information about her boyfriend's physical abuse of Jesse, Ashleigh denied to the Department's social worker that Jesus F. had been intentionally abusive, explaining, even though she had seen Jesus F. hit Jesse on the head, "they both like to play rough." In a subsequent interview, however, Ashleigh insisted she had not been aware that Jesus F. had ever disciplined Jesse; and she repeated that denial in her live testimony. Although Ashleigh said she would not allow Jesus F. to have contact with Jesse in light of the current allegations, she stated she intended to maintain her relationship with him. Indeed, at the time of the jurisdiction/disposition report Ashleigh continued to live with him. For his part, Jesse stated he did not want to reside in the home with Ashleigh if Jesus F. was also living there.

In finding a substantial danger to Jesse's well-being if he were returned home and no reasonable alternative to removal, the juvenile court explained, "I have taken into account she [Ashleigh] clearly indicated to the County in these reports she does not want to break off the relationship to this gentleman who perpetrated this on her child. And there is nothing in these reports where she has actually told this man and has advised the County, 'I told this man, my child has certain emotional, developmental issues. You can't be disciplining my child. That's my job. I'll take care of it. If there is an issue, you talk to me. You step away. You are not going to be hitting my boy,' and that needed to be done. And I think any reasonable mother would have done that. And I don't find any evidence that she has. And that means that that man is still a risk to this child. And the mother [is] not [d]oing anything about it. And by clear and convincing evidence, thereby, the child will not be returned to the mother."

Indulging all inferences in support of the juvenile court's decision to remove Jesse from Ashleigh's care and custody, as we must on appeal (see *In re Carl N.* (2008)

reported that he does wrestle with Jesse, which may have caused the mark on the child's back."

6

160 Cal.App.4th 423, 432), this evidence was sufficient to support the court's rulings. *In re Jasmine G.* (2000) 82 Cal.App.4th 282, the case upon which Ashleigh principally relies, does not compel a different result. In *Jasmine G.* the basis for dependency jurisdiction was inappropriate corporal punishment to discipline a teenager (use of a switch and thin leather belt for discipline). Both parents, who lived separately, had engaged in the improper discipline. By the time of the disposition hearing, "[b]oth parents had forsworn corporal punishment of teenagers. Both expressed remorse for having used corporal punishment on Jasmine. Both had attended parenting classes, and both had undergone therapy to improve their parenting skills. Jasmine had no fear of either." (*Id.* at pp. 288-289.) The Court of Appeal held that neither the subjective belief of the social worker that Jasmine's parents lacked an understanding of their responsibility for the incident that brought the matter into court nor the social worker's perception that the parents were uncooperative and hostile to the dependency system constituted substantial evidence to support the child's removal from her parents in view of the parents' sworn testimony they would not again use corporal punishment. (*Id*. at pp. 290-291.) Finally, the appellate court was particularly troubled that, even if Jasmine had been properly removed from her mother, the record disclosed absolutely no basis not to return the child to her father. (*Id*. at pp. 292-293.)

Given Ashleigh's apparent remorse about her own actions and her enrollment in another parenting class by the time of disposition, if the only basis for jurisdiction in this case were Ashleigh's inappropriate discipline of Jesse, *Jasmine G.* might be persuasive— although the different impact of physical abuse/inappropriate discipline on an apparently normal teenager (Jasmine) and an emotionally disturbed, eight-year-old (Jesse) is not without significance.[3] But, as discussed, the juvenile court here was primarily focused on Jesus F.'s physical abuse of Jesse (who also verbally threatened the child) and Ashleigh's insistence on continuing a relationship with him notwithstanding his poor history with her

---

[3]     Unlike Jasmine, of course, Jesse was placed with one of his parents following the finding of dependency jurisdiction—yet another significant difference in the two cases.

7

child and also with his own children.  In considering that evidence the juvenile court in the case at bar was not relying on perceptions and subjective beliefs of the social worker about the family values of the parents, as was the juvenile court in *Jasmine G.*, but its own evaluation of the very real threat to Jesse from Ashleigh's abusive boyfriend and Ashleigh's demonstrated inability to protect her child from that abuse.  The court's conclusion that removal was necessary to protect Jesse is adequately supported by this record.

## DISPOSITION

The juvenile court's disposition order is affirmed.


PERLUSS, P. J.

We concur:


ZELON, J.


STROBEL, J.*

---

\*    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.