Filed 9/27/16  In re Logan P. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re LOGAN P., a Person Coming Under the Juvenile Court Law. | B269541<br>(Los Angeles County<br>Super. Ct. No. DK06885) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>S.S.,<br><br>    Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County. Marguerite D. Downing, Judge.  Affirmed.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel and Jessica Paulson-Duffy, Deputy County Counsel, for Plaintiff and Respondent.

_____

S.S. (mother) challenges the juvenile court's jurisdiction order regarding her son, Logan P. (minor), pursuant to Welfare and Institutions Code section 300, subdivision (b),[1] and its subsequent disposition order removing minor from her custody. She claims there is insufficient evidence that (1) minor is at risk of harm because she has a substance abuse problem, and (2) the only way to protect him was removal from her custody. Upon review, we find no error and affirm.

## FACTS

In February 2011, when mother was 16 years old, she was arrested for possession of ecstasy at school. Her parent (maternal grandmother) filed missing persons reports regarding mother in February 2012. In May 2012, she walked into Downey Regional Medical Center and complained of stomach pains and nausea. She admitted to using ecstasy, marijuana and methamphetamines. In addition, she admitted to being depressed and having suicidal thoughts. The following month, maternal grandmother filed another missing persons report regarding mother. Then, on June 28, 2012, the police responded to mother's house after she grabbed maternal grandmother's hair and threw her to the floor during an argument, and after mother punched her sister in the face several times with a closed fist. Mother was arrested for battery.

In 2013, while mother was in a group home, she gave birth to a baby girl named E.S.[2] E.S. developed a persistent cough. When mother refused to take E.S. to a hospital, placement staff took her. By the end of 2013, mother went with E.S. to live with maternal grandmother. A few months later, mother turned herself into the police because of a no bail warrant.[3]

In April 2014, the Department of Children and Family Services (Department) received a referral alleging general neglect by mother. Among other things, the reporting

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]    This appeal does not pertain to E.S.

[3]    The appeal does not disclose the underlying basis for the warrant.

party stated that mother abuses alcohol and marijuana. When interviewed, mother admitted to using methamphetamine two or three months prior, and stated that when she used, E.S. was with maternal grandmother. After that initial contact between the Department and mother, she failed to drug test and stay in contact with the Department for more than a year.

In August 2014, a maternal aunt reported that E.S. had head lice and did not know if mother was having it treated. The juvenile court issued an order that E.S. was detained at large. Also, it issued a no-bail warrant for mother.

In early 2015, mother became pregnant with minor. The father was Mario P. (father). On June 5, 2015, mother was arrested. When E.S. was found, she was dirty, ill and had dried mucous under her nose. According to the social worker, E.S. "did not look good." She had an upper respiratory infection, diaper rash, and head lice. Moreover, she was in a portable play pen that had clothes hanging on the side. Also, there was a brassiere next to her, which was a safety hazard for a sleeping baby. She was dressed in regular clothes rather than pajamas. Though mother and father said they gave E.S. Tylenol, she did not easily rouse, and it appeared she had been given something stronger.

E.S. was placed in foster care. Though E.S.'s foster parents offered two 2-hour weekly visits, mother visited only periodically. And when she did visit, it was for one hour at a time on Friday afternoons. During those visits, mother had difficulty focusing on E.S. Mother regularly brought her boyfriend or a girlfriend, and they often spent the time watching videos on their phones while E.S. played. Only in September 2015, when prompted by a social worker, did mother finally focus her attention on E.S. during visitation.

From June 2015 to September 2015, mother was enrolled in random drug testing and six times tested negative for all substances. There was one unexcused missed test on July 23, 2015. In August 2015, mother enrolled in an outpatient substance abuse treatment program. She was supposed to attend parenting class, substance abuse education, and counseling for victims of domestic violence, and she was supposed to attend three Alcoholics Anonymous (AA) or Narcotics Anonymous (NA) meetings per

3

week. While mother attended eight groups sessions, she had 15 unexcused absences. In addition, mother never enrolled in individual counseling. According to personnel at the program, it never received documentation from mother establishing that she was going to AA or NA meetings.

In late September 2015, when minor's birth was impending within the next few weeks, mother and father consented to have minor detained by the Department at the hospital after his delivery.

On October 5, 2015, the juvenile court sustained the following allegation: "[Mother] has an unresolved history of drug abuse, and is a recent abuser of methamphetamine, which renders the mother periodically incapable of providing regular care for [E.S.]. The mother's use of drugs places the child at risk of physical harm." The juvenile court ordered mother to participate in family reunification services, including a substance abuse program, a 12-step program, random drug and alcohol testing, parenting classes, and individual counseling to address case issues, including anger management.

Mother was terminated from her outpatient program on October 7, 2015. E.S. remained in foster care.

Minor was born in October 2015. Mother and father did not alert the Department. And because they did not tell the hospital that mother had an open dependency case for E.S., and that minor was to be detained at birth, neither mother nor minor was given a toxicology screen. Mother and father brought minor to the Department on October 13, 2015, and he was placed in foster care with E.S. Three days later, the Department filed a section 300, subdivision (b) petition on minor's behalf alleging, inter alia, "[Mother] has an unresolved history of illicit drug abuse, including methamphetamine, which renders the mother incapable of providing regular care for the child. The child is of such a young age, requiring constant care and supervision, and the mother's illicit drug abuse interferes with providing regular care and supervision of the child. The child's sibling, [E.S.], is a dependent of the juvenile court due to the mother's illicit drug abuse. The mother's unresolved history of illicit drug abuse endangers the child's physical health and safety,

4

and places the child at risk of serious physical harm, damage and failure to protect." The petition included a failure to protect allegation against father.

The juvenile court ordered minor detained. The parents were granted family reunification services.

A dependency investigator interviewed mother, who admitted she occasionally used methamphetamine when she was 15 and 16 years old. She denied using drugs in the previous two years.

The parties agreed to strike the allegations against father. As a result, the failure to protect allegations against father were stricken.

On December 24, 2015, the juvenile court held the jurisdiction and disposition hearing. Mother was not in attendance. The juvenile court sustained the petition, declared minor a dependent, and removed him from the parents' custody. It asked the counsel for the Department if it had filed a count under section 300, subdivision (j). Counsel said, "No." Following that colloquy, the juvenile court stated that "pursuant to [section] 361[, subdivision (c)], there is a substantial danger if the [minor] were returned home," and that there were "no reasonable means by which he may be protected without removing him from his parent's physical custody."

Subsequently, the juvenile court addressed mother's counsel and stated, "And with respect to sustaining the petition, your client is 19 years old. She has had a drug history. [¶] She says she has been clean for two years, but it appears that this may not be the case. She has not completed a program. An older sibling is still outside of the home[,] and as [counsel for the Department] indicated, [mother] is making progress, but . . . it is not a resolved issue."

The juvenile court ordered the minor suitably placed, and instructed the Department to provide the family with reunification services. Mother was ordered to complete parenting classes, a substance abuse program with random testing, a 12-step program with a report card and sponsor, and individual counseling. She was granted monitored visitation, and the Department was given discretion to liberalize.

This timely appeal followed.

5

**DISCUSSION**

## I. Standard of Review.

We review a juvenile court's jurisdiction findings and disposition order to determine whether they are supported by substantial evidence. (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1384.) Accordingly, "we may look only at whether there is any evidence, contradicted or uncontradicted, which would support the trier of fact's conclusion. We must resolve all conflicts in favor of the court's determination, and indulge all legitimate inferences to uphold the court's order. Additionally, we may not substitute our deductions for those of the trier of fact. [Citation.]" (*In re John V.* (1992) 5 Cal.App.4th 1201, 1212.)

## II. Jurisdiction.

A child is a dependent under section 300, subdivision (b)(1) if he or she "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." Before declaring jurisdiction under section 300, subdivision (b)(1), a juvenile court generally must find the following: "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.)

A parent with a substance abuse problem can pose a threat to a child. Recognizing this, our Legislature has declared that "[t]he provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of [a] child." (§ 300.2.) Case law provides that when a dependency case involves a child six years old or younger, a "'finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of harm.'" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219 (*Christopher R.*).)

6

A juvenile court may find that a parent has a substance abuse problem if she fits with the definition set forth in the Diagnostic and Statistical Manual of Mental Disorders (4th rev., ed. 2000) (DSM-IV-TR).  (*Christopher R.*, *supra*, 225 Cal.App.4th at p. 1217, citing *In re Drake M.* (2012) 211 Cal.App.4th 754.)

"The full definition of 'substance abuse' found in the DSM-IV-TR describes the condition as "[a] maladaptive pattern of substance use leading to clinically significant impairment or distress, as manifested by one (or more) of the following, occurring within a 12-month period:  [¶]  (1) recurrent substance use resulting in a failure to fulfill major role obligations at work, school, or home (e.g., repeated absences or poor work performance related to substance use; substance-related absences, suspensions, or expulsions from school; neglect of children or household)[;  ¶]  (2) recurrent substance use in situations in which it is physically hazardous (e.g., driving an automobile or operating a machine when impaired by substance use)[;  ¶]  (3) recurrent substance-related legal problems (e.g., arrests for substance-related disorderly conduct)[; and  ¶]  (4) continued substance use despite having persistent or recurrent social or interpersonal problems caused or exacerbated by the effects of the substance (e.g., arguments with spouse about consequences of intoxication, physical fights)."  [Citation.]'" (*Christopher R.*, *supra*, 225 Cal.App.4th at pp. 1217–1218.)[4]

While the foregoing is "a generally useful and workable definition of substance abuse for purposes of section 300, subdivision (b)," it "is not a comprehensive, exclusive

---

[4]      Notably, the DSM-IV-TR was replaced by the more recent Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5). (*Christopher R.*, *supra*, 225 Cal.App.4th at p. 1218, fn. 6.)  DSM-5 defines "'substance use disorders,' which combines substance abuse and dependence.  [Pursuant to that combination,] DSM-5 identifies 11 relevant criteria, including cravings and urges to use the substance; spending a lot of time getting, using, or recovering from use of the substance; giving up important social, occupational or recreational activities because of substance use; and not managing to do what one should at work, home or school because of substance use.  The presence of two or three of the 11 specified criteria indicates a mild substance use disorder; four or five indicate a moderate substance use disorder; and six or more a severe substance use disorder.  [Citation.]" (*Ibid.*)

definition mandated by either the Legislature or the Supreme Court[.]" (*Christopher R.*, *supra*, 225 Cal.App.4th at p. 1218.) Thus, a juvenile court may make a substance abuse determination without reference to DSM-IV-TR. In *Christopher R.*, for example, the court found that a mother's use of cocaine during her pregnancy, her admission to using cocaine in the past, and her failure to consistently drug test and enroll in a drug abuse program amounted to substantial evidence that her substance abuse endangered the health and safety of her children. (*Id.* at pp. 1217–1219.)

Here, mother admitted to using methamphetamine in early 2014. From April 2014 to June 2015, she failed to drug test and stay in contact with the Department. In July 2015, she had a missed drug test. Case law provides that a missed drug test is "properly considered the equivalent of a positive test result." (*Christopher R.*, *supra*, 225 Cal.App.4th at p. 1217.) By extension, a series of missed tests are properly considered the equivalent of a series of positive drug tests, from which recurrent use can be inferred.[5] The juvenile court impliedly found that mother had been using drugs from early 2014 to July 2015, which caused her to fail to keep E.S. healthy, clean and free of vermin. From that implied finding, there was sufficient evidence that mother exhibited substance abuse under the first definition in the DSM-IV-TR, i.e., recurrent drug use over a 12-month period resulting in neglect of a child.

Even if the DSM-IV-TR was not satisfied, the juvenile court was justified in finding that mother had a substance abuse problem because of her prior admissions, her evasion of the Department and drug testing for a year, her missed drug test in July 2015, the finding that she had a substance abuse problem in E.S.'s dependency case, the removal of E.S. from her custody, her failure to reunify with E.S., her evasion of

---

[5]     In her appellate briefs, mother repeatedly suggests that the evidence shows that she last used methamphetamine in early 2014, and that any problem she has with substance abuse is resolved. This suggestion must be rejected. As we have indicated, missed drugs tests are considered positive drugs tests. A parent cannot absent herself from drug testing and contact with the Department and later claim that she was clean and sober during those times.

8

toxicology screens for herself and minor at the hospital, and her failure to complete a drug program, go to NA or AA, and enroll in individual counseling. Also, it is noteworthy that mother failed to appear at the jurisdiction hearing.

Because there was sufficient evidence of substance abuse, the juvenile court was justified in finding jurisdiction under section 300, subdivision (b)(1) given that minor was only a few months old at the time of the hearing.

### III. Disposition.

Section 361, subdivision (c) provides, inter alia, that "[a] dependent child shall not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence" that "(1) [t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody."[6]

Case law establishes that "[t]he jurisdictional findings are prima facie evidence the child cannot safely remain in the home. [Citation.] The parent need not be dangerous and the child need not have been actually harmed before removal is appropriate. [Citation.]" (*In re R.V.* (2012) 208 Cal.App.4th 837, 849.) Due to the evidence supporting the juvenile court's implied finding that mother has a substance abuse problem, there is prima facie evidence that minor had to be removed, particularly because he was only a few months old at the time of the disposition order. Beyond that, the

---

[6] It is well established that the clear and convincing evidence standard in section 361, subdivision (c) "is for the edification and guidance of trial court and not a standard of appellate review." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1525.) "[O]n appeal from a judgment required to be based upon clear and convincing evidence, 'the clear and convincing test disappears . . . [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong.' [Citation.]" (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 881.)

evidence showed mother and father had neglected E.S. and lacked sufficient parenting skills to take care of a child. Accordingly, the juvenile court did not err in finding that minor should be removed from mother's custody.

The preceding aside, mother argues for reversal on the grounds that the juvenile court erred by not complying with its obligations under section 361, subdivision (d) to state the facts supporting the removal.

Section 361, subdivision (d) provides that "[t]he court shall make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home. . . . The court shall state the facts on which the decision to remove the minor is based."

Based on this statute, *In re Ashley F.* (2014) 225 Cal.App.4th 803, 810, stated, "The requirement for a discussion by the child welfare agency of its reasonable efforts to prevent or eliminate removal [citation], and a statement by the court of the facts supporting removal [citation], play important roles in this scheme. Without those safeguards there is a danger the agency's declarations that there were 'no reasonable means' other than removal 'by which the [children's] physical or emotional health may be protected' and that 'reasonable efforts were made to prevent or to eliminate the need for removal' can become merely a hollow formula designed to achieve the result the agency seeks." Further, the court posited that the "'reasonable means' of protecting the children that should at least have been considered include unannounced visits by DCFS, public health nursing services, in-home counseling services and removing [the offending parent] from the home. [Citation.]" (*Ibid.*)

We conclude that the juvenile court erred by not stating the facts upon which it based its conclusion. But this error was harmless because it is not reasonably probable that the juvenile court would have decided differently absent the error. (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218.) Due to mother's substance abuse problem, occasional visits by social workers or nurses would not have ameliorated the threat to minor that he would be harmed or neglected by mother while she was using drugs. In-home counseling services would not possibly suffice in light of mother's failure to

10

complete a drug program and individual counseling.  And removing mother from the home was not feasible because father agreed to the initial detention, and he had already demonstrated with E.S. that he lacked sufficient parenting skills to take care of a child. Consequently, removal was the only viable option.

## DISPOSITION

The jurisdiction and disposition orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
ASHMANN-GERST

We concur:


_____, P. J.
BOREN


_____, J.
CHAVEZ